[No. 4822. Decided December 19, 1903.]

PUGET SOUND PUBLISHING COMPANY, *Respondent,* v. THE TIMES PRINTING COMPANY, *Appellant, and* CITY OF SEATTLE, *Defendant.*[1]

NEWSPAPER—WHAT IS—SUFFICIENCY OF EVIDENCE. The Daily Bulletin, a paper of four pages, each thirteen by twenty inches with five colums of regular printed matter, devoted to the dissemination of news upon a great variety of topics of interest to the general public and containing general advertisements, but giving special prominence to legal news, is a "newspaper" within § 31, Seattle city charter, relating to the selection of an official city paper, and within the usual acceptation of the term.

SAME—GENERAL CIRCULATION—NEED NOT BE UNIVERSAL. A paper having 750 to 1000 subscribers in the city of Seattle, daily

[1]Reported in 74 Pac. 802.

distributed to them, and read by about 3000 persons, is a paper of "general circulation," since general means extensive and not universal.

DAILY PAPER—HOLIDAYS EXCEPTED. · A paper published every day except Sundays and legal holidays is a daily paper.

MUNICIPAL CORPORATIONS—OFFICIAL PAPER—LETTING AWARD— CITY COUNCIL—DISCRETION—ABUSE. Under a city charter requiring the city printing to be awarded to the lowest bidder, the city council, although vested with some discretion in determining which is the lowest bid, cannot arbitrarily award the printing in plain disregard of the provisions, and the courts will restrain an award at 50 cents an inch where a qualified competitor has bid less than 16 cents per inch.

SAME—HIGHEST BIDDER—ACTION TO ENJOIN AWARD—EVIDENCE AS TO AVERAGE PRICE. In an action to restrain a city council from letting the public printing to the highest bidder, in violation of charter provisions, evidence as to the average price paid and as to the reasonableness of the defendant's bid is properly excluded as immaterial.

Appeal from a judgment of the superior court for King county, Tallman, J., entered May 19, 1903, upon the decision and findings of the court in favor of the plaintiff, granting a permanent injunction against the city council's award of the official printing of the city of Seattle. Affirmed.

*Bausman & Kelleher,* for appellant.

*Geo. F. Aust (C. A. Riddle,* of counsel), for respondent.

ANDERS, J.—Section 31 of the charter of the city of Seattle provides that:

"A daily newspaper of general circulation and published in the city, to be styled 'City Official Newspaper,' shall be designated in the following manner: The city clerk shall, on the first Monday in November in each year, cause to be published for ten consecutive days, excluding Sundays, in some paper of general circulation in the city, a call to the owners and managers of newspapers for sealed proposals to do the city printing for the then ensuing next

fiscal year, each of which proposals shall be accompanied by bond with not less than two sureties, in the sum of five thousand dollars, approved by the comptroller and corporation counsel, conditioned that if the proposal be accepted the party proposing will, during the period mentioned in his proposal, well, seasonably, and faithfully cause to be accurately printed and published, according to law, in a certain daily newspaper (naming it) of general circulation in the city and published therein, all and singular the matters and things required by law to be published in the city official newspaper of the city of Seattle. . . . and thereupon the council shall, by resolution, announce the names of all parties whose proposals have been offered, and the terms of their proposals respectively, and designate as city official newspaper that newspaper whose manager or owner has offered the lowest proposals, with duly approved bond, and such newspaper shall, at the beginning of the next ensuing fiscal year, and during said year, be such city official newspaper; . . ."

Pursuant to this provision of the city charter , the city clerk duly issued and published a call to the owners and managers of newspapers, published in the city of Seattle, for bids for the city printing for the year 1903. In response to such call, the respondent, a taxpayer of the city of Seattle, and the owner and publisher of The Daily Bulletin, duly submitted its bid, accompanied by its bond in the sum required by the city charter, in which it offered to do the city printing for the specified time at the rate and for the price of sixteen cents per inch for each first insertion and ten cents an inch for each subsequent insertion.

Among the bidders was The Times Printing Company, the owner and publisher of The Seattle Daily Times. That company proposed to do the city printing in The Times at the rate of fifty cents an inch. The city council, notwithstanding this disparity in the bids, designated The Seattle Daily Times as the official newspaper of the city of

Seattle for the year 1903, and awarded the city printing for the year 1903 to the defendant, The Times Printing Company. The respondent thereupon instituted this action against the defendants to obtain an injunction restraining the city and its council from further proceedings under said award, and from recognizing the bid of The Times Printing Company, and compelling them to award the printing to the plaintiff. A temporary injunction was issued, which was, upon the final hearing, made permanent. The defendant The Times Printing Company has appealed.

It is claimed by the learned counsel for the appellant that The Daily Bulletin is not a newspaper of general circulation in the city of Seattle, within the meaning of § 31 (above quoted) of the city charter, and that the court erred in holding the contrary. The court found, among other things, that The Daily Bulletin, printed, owned, and managed by the plaintiff, is a daily newspaper, published in the city of Seattle every day except legal holidays, and has been so published for more than eight years; that it is a four-page paper, each page having five columns of regular printed matter; that the pages are each thirteen inches by twenty inches; that it is devoted to the dissemination of news on a great variety of topics of interest to the general reader, but gives special prominence to the dissemination of legal news, including proceedings in the supreme court of the state, and of the federal, state, and city courts sitting at the city of Seattle; that it gives a complete report, both of the pleadings filed in cases pending, and also of cases tried, and the result of such trials, and all new suits filed; that it publishes the proceedings of the board of public works of the city of Seattle, showing the board's action in all matters relating to street and other improvements and assessments against real estate on account thereof, and all matters of interest in relation to real estate; that it regularly pub-

lishes a complete report of the doings of the city council of
Seattle; that it gives a daily record of the deeds, mortgages,
mechanics and other liens, and all other instruments, filed
in the office of the auditor of King county, and sales of real
estate by the sheriff under judicial process; that in every
issue it contains general news of the day of interest to news-
paper readers generally; it published daily the weather re-
port, the Seattle bank clearances, theatrical news, the
monthly statement of the Puget Sound customs, the build-
ing statistics of Seattle, and the notices to all property
holders whose possessions are affected by the board of pub-
lic works; also the most prominent building news of the
entire northwest; that it contains varied advertising mat-
ter, advertising more than one hundred different classes
of business, trades, and professions, confined to no one
calling or trade, but such as is to be found in newspapers
of general circulation; that it contains a complete report of
the doings of the Seattle Chamber of Commerce and of the
Seattle Manufacturers' Association.

The court in its findings specifically designated the in-
stitutions, trades, business, kind of property, etc., regularly
advertised in The Bulletin, which we need not particularly
enumerate.   The court further found, that The Bulletin
circulates among all classes of people in the city of Seattle;
that it has between 750 and 1000 subscribers in the city of
Seattle, and is daily delivered to such subscribers, with the
exception of legal holidays, and is daily read in the city of
Seattle by about 3000 persons; that it daily contains a re-
sume of the world's telegraphic news, briefly stated; that it
contains an editorial column devoted to the discussion of
events and topics of interest to the general public; that it
has been, by order of the superior court of King county,
frequently designated as, and declared to be, a newspaper
of general circulation; that for more than three years no-

tices of all classes, required by law to be published in a newspaper of general circulation, have been published regularly in The Bulletin; among which appear summons for publication, foreclosure notices, all manner of probate notices required by law to be published, notices of foreclosure of delinquent tax certificates, and all other such notices as are usually found in a newspaper of general circulation; and that in each instance an order of the superior court of King county has declared The Daily Bulletin to be a newspaper of general circulation in King county. The testimony introduced at the trial, and the copies of the paper sent up as exhibits, seem to support the findings of the court as to the character of The Daily Bulletin.

It is asserted by the learned counsel for the appellant that words in a statute or charter are presumed to be used in their ordinary and popular signification, unless there is particular reason for assuming they are not, and that, in the ordinary acceptation of that term, The Bulletin cannot be said to be a newspaper. Assuming that the rule of law as stated by counsel is correct, and that the framers of the city charter used the word newspaper according to its usual acceptation, the question remains, what is its usually accepted meaning? Counsel for appellant answers this question by quoting the following definition from The Century Dictionary:

"NEWSPAPER.—A paper containing news; a sheet containing intelligence or reports of passing events, issued at short but regular intervals, and either sold or distributed gratis. . . ."

"Newspapers may be classed as *general*, devoted to the dissemination of intelligence on a great variety of topics, which are of interest to the general reader, or *special*, in which some particular subject, as religion, temperance, literature, law, etc., has prominence, general news occupying only a secondary place."

This definition is substantially the same as that given by the courts of various states. A late law writer defines a newspaper as follows:

"A newspaper, in the popular acceptance of the word, is a publication issued at regular stated intervals, containing, among other things, the current news, or the news of the day." 21 Am. & Eng. Enc. Law, p. 533 (2d ed.).

According to the above definition, it can hardly be doubted that the publication in question is a "newspaper," in contemplation of the charter of the city of Seattle. Indeed, we have found no case in which a publication containing intelligence on as many topics of interest to the public as The Bulletin regularly contains has been held not to be a newspaper. In the recent case of *Hall v. Milwaukee*, 115 Wis. 479, 91 N. W. 998, in which practically all the authorities upon this question are collected, the supreme court of Wisconsin held that a daily eight-page paper, twelve by eighteen inches, with a bona fide morning circulation of 375 copies and an evening circulation of 578 copies, 368 of which were paid by commission men—being a law and business reporter, with reports of the daily markets, containing also items and news of general interest to the public, general advertisements, and "plate matter" in varying quantities, sometimes more than a column containing general matter—was a "newspaper" within the meaning of the charter of Milwaukee requiring the city council to let the publication of city ordinances, etc., to the newspaper offering to make the publication at the lowest price for the year. That is a well considered case, and the doctrine therein announced is supported by the overwhelming weight of authority. It is in point here by reason of the similarity of the publication there considered to that in question in the case at bar. After citing all of the cases cited by appellant, and many others, that court observed: "The only decisions

tending to exclude special or class journals from designation of newspapers, for purposes of statutory publication, are *Beecher v. Stephens,* 25 Minn. 146; *In re Charter Application,* 11 Phila. 200; *Crowell v. Parker,* 22 R. I. 51, 46 Atl. 35 [84 Am. St. 815]"—all cited by appellant. And the court, in its review of the three cases last above cited, clearly shows that they do not really impugn its conclusion in the case before it.

It is next claimed that, even if this publication is, in contemplation of law, a newspaper, it is not a newspaper of general circulation in the city of Seattle, and for that reason does not meet the requirements of the city charter. If it were true that the word "general" is equivalent to "universal," there would certainly be much force in this contention. But these words are not synonymous. The word general is derived from *"genus,"* and technically relates to a whole genus or kind, or to a whole class or order. But its more usual meaning is, common to many; widely spread; prevalent; extensive, though not universal; as, a *general* opinion; a *general* custom. Webster's International Dictionary.

In *Blair v. Howell,* 68 Iowa, at page 621, 28 N. W. 200, the supreme court of Iowa considered and determined the meaning of the word "general" as used in a statute of that state. In the course of its opinion the court said:

"The only difficulty, if there is any, arises upon the question as to whether Bowen's recognition of the children was general and notorious, within the meaning of the statute. . . . It is proven that Bowen sometimes denied that the plaintiffs were his children. In such denial he certainly did not recognize them. It is claimed, therefore, that his recognition was not general, but, at most, was limited and partial. But everything is limited and partial which is not universal, and 'general' is not equivalent to 'universal.'"

Webster says that the word "general" means "extensive, though not universal." In *Linn v. Allen* (Ind.), 44 N. E. 646, 33 L. R. A. 779, 57 Am. St. 223, the question whether "The Daily Reporter," printed and published in the city of Indianapolis, having a circulation in the city of Indianapolis of about 550 copies, and of about 2500 copies outside the city throughout the state, and published daily, except Sunday, was a "newspaper of general circulation," within the meaning of the statute providing for the service of process by publication, was directly before the supreme court of Indiana; and the court held that it was such a paper, although it was primarily devoted to the general dissemination of legal news, but contained other matter of general interest to the public. In discussing this question the court observed:

"By a 'newspaper of general circulation' the legislature certainly did not intend a newspaper read by all the people of the county. As a matter of fact, every newspaper is in greater or less degree devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of such party, it would not, therefore, be a newspaper of general circulation. Yet such a newspaper is, to a large extent, read only by the members of the political party whose doctrines are advocated and expounded in its columns. There is no doubt that where a publication is devoted purely to a special purpose, it would be an unfit medium to reach the general public. A medical, literary, scientific, or legal journal is professedly but for one class, and that class but a comparatively small part of the whole population; and it would be manifestly unjust, as well as against the letter and spirit of the statute, to use such a journal for the publication of a notice affecting the property or personal rights of citizens in general. The newspaper before us, however, is no such professional or class journal. While it is a law publication in a certain sense, and of particular interest to the legal profession, yet its character, as shown by the evidence,

makes it of general interest to the community at large, especially to that part of the community likely to be concerned with matters in courts and other public business."

See also: *Kerr v. Hitt,* 75 Ill. 51; *Hall v. King,* 38 Minn. 349, 37 N. W. 792; *Lynch v. Durfee,* 101 Mich. 171, 59 N. W. 409, 24 L. R. A. 793, 45 Am. St. 404; *Kingman v. Waugh,* 139 Mo. 360, 40 S. W. 884. In view of the facts disclosed by the record in this case, and the decisions of other courts, we are clearly of the opinion that The Daily Bulletin is, as the court below found, a newspaper of general circulation in the city of Seattle.

It is suggested, however, that it is not in fact a daily newspaper because it is not published either on Sundays or legal holidays, but we do not think the point is well taken. It was held by the supreme court of California, in *Richardson v. Tobain,* 45 Cal. 30, that a newspaper which was published every day of the week except Monday was a daily newspaper in the sense of the statute requiring certain notices to be published in a "daily newspaper." In its discussion of the question the court said:

"The term was used, and is to be understood, in its usual popular sense; and in this sense it is clear that a paper which, according to its usual custom, is published every day of the week except one, is a daily paper. Otherwise a paper which is published every day except Sunday would not be a daily paper. The term, in its popular sense, does not admit of this construction."

The same rule was announced by the supreme court of Minnesota, in *Tribune Publishing Co. v. Duluth,* 38 Minn. 27, 47 N. W. 309, wherein it was held that a newspaper published six consecutive days in each week was a daily newspaper, within the intent and meaning of the law. We are constrained to hold that The Daily Bulletin is a daily newspaper according to the common acceptation of that term. As we have said, it is a newspaper; and, as it is not

within either of the classes of newspapers known as monthly, weekly, or semi-weekly, it must be classed as a daily paper, notwithstanding the fact that it is not published every day of every week.

We come now to the consideration of the appellant's next contention, namely, that it was for the council alone, and not the court, to determine which of the several bids was the lowest. In support of this proposition appellant cites and relies on *Times Publishing Co. v. Everett,* 9 Wash. 518, 37 Pac. 695, 43 Am. St. 865. It appears in that case that the city of Everett called for bids for the city printing and advertising; that two bids were submitted, one by The Times Company, and the other by one Bradley. The council awarded the contract to Bradley by resolution, declaring him to be the "lowest and best bidder therefor," although his bid was, according to its terms, higher than that of his competitor. The law provided that such contracts should be let to the lowest bidder. The publishing company brought suit in the superior court to enjoin the performance of the contract, and to require the city to enter into a contract with the plaintiff as the lowest bidder for the printing and advertising. The trial court sustained a demurrer to the complaint, and dismissed the action. On appeal the judgment was reversed by this court. An examination of that case will disclose the fact that it was not there held that the discretion vested in a city (or its council), in cases of this character, is not subject to review by the appellate court. In that case this court conceded that, even under the strict language of the statute requiring the contract for advertising to be let to the lowest bidder, there was some discretion left to the council. But, in order that its meaning might not be misunderstood, it carefully designated the matter and things which were left to the discretion of the council. The following language, appearing in

the opinion of the court, must not be disregarded in considering that case:

"We have this case upon the complaint alone, and, under its allegations, the conclusion cannot be escaped that there was, on the part of the council, a gross disregard of the interests committed to it in making its award. It found nothing but that the bid of Bradley was the lowest and best, but the complaint shows affirmatively that the appellant was, in every respect, qualified and competent, and was equally entitled to consideration with its competitor. Yet, with the bidders standing on an equal footing, the contract was awarded to that one whose bid was almost four times that of his rival, without any apparent excuse or reason but the arbitrary will of the council."

So in this case, we see no reason or excuse for awarding the contract to the appellant "but the arbitrary will of the council." It would be extremely unfortunate for the inhabitants of our cities if the respective city councils should be permitted, under the guise of "judicial discretion," or otherwise, arbitrarily and unreasonably to disregard the plain provisions of statutes or charters. This court has not heretofore sanctioned any such proceeding, and is not inclined to do so in this instance.

It is further insisted that the court erred in refusing to permit appellant to prove the average price paid in Seattle for printing notices and advertisements such as those in question, and also in refusing to allow appellant to prove that its bid was a reasonable one. We do not think the court erred in either of those rulings. The matters so sought to be proved were not material to the issues to be tried and determined, and the proffered testimony was, therefore, rightly excluded.

We find no error in the record, and the judgment is therefore affirmed.

FULLERTON, C. J., and DUNBAR, HADLEY, and MOUNT, JJ., concur.