## City of Richmond et al. *v.* Miller.

[No. 8,491.   Filed January 28, 1915.]

1. STATUTES.—*Construction.*—A court is not warranted in construing a statute in such way as to do violence to the language used, unless to do so is necessary to render it intelligible and harmonize its language with evident legislative intent.   p. 22.

2. MUNICIPAL CORPORATIONS.—*Vacation of Streets and Alleys.—Statutes.—Jurisdiction of Circuit Court.*—Notwithstanding the fact that at the time of the enactment of §8910 Burns 1914, Acts 1907 p. 617, §3, there existed statutory provision for the vacation of streets and alleys by cities and towns, such section can not be confined in its application to the vacation of streets or alleys in cities and towns that are ·not in active operation; and, while it gives to circuit courts original jurisdiction in vacation proceedings where the city or town is inactive or dormant, it also confers such jurisdiction, as in the nature of a cumulative remedy, in cases where the city or town affected is a corporation in active operation.   p. 22.

3. APPEAL.—*Review.—Vacation of Streets and Alleys.—Ruling on Remonstrance.*—In an *ex parte* proceeding under §8910 Burns 1914, Acts 1907 p. 617, §3, to vacate an alley, the action of the court in striking out a petition by the city for leave to file a remonstrance was not error, where the causes of remonstrance assigned were not within the provisions of §4 of the act (§8911 Burns 1914) specifying the grounds upon which a person feeling himself aggrieved may remonstrate.   p. 25.

4. MUNICIPAL CORPORATIONS.—*Vacation of Streets and Alleys.—Notice of Proceeding.—"Daily Newspaper".*—Under §8910 Burns 1914, Acts 1907 p. 617, §3, providing for the vacation of streets and alleys on the filing of a petition and the giving of notice as in the act provided, and §8916 Burns 1914, being §9 of the act, setting forth that notice shall be given "by publication for ten days, by two successive weekly publications in some newspaper, weekly, daily, or daily except Sunday", a notice published for the required time in a newspaper issued on each day of the week except Monday, was sufficient, since the term "daily" is to be taken in its usual and popular sense, and, judged by the standard of popular classification, such a paper is a "daily newspaper".   p. 25.

From Wayne Circuit Court; *Henry C. Fox,* Judge.

Proceedings on the petition of Helen M. Miller for the vacation of an alley in the City of Richmond.   From a judg-

ment ordering the vacation, the city and others appeal. *Affirmed.*

*Alonzo M. Gardner, Wilfred Jessup* and *Frederick G. White,* for appellants.

*Arthur C. Lindemuth,* for appellee.

CALDWELL, J.—Appellee on May 5, 1911, filed her *ex parte* petition in the trial court, under the terms of §3 of the act of 1907 (Acts 1907 p. 617, §8910 Burns 1914), praying for the vacation of a designated part of a public alley in the city of Richmond. The petition alleges among other things that the section of alley sought to be vacated is half a block in length, and that petitioner owns all the lands and lots immediately adjoining and abutting thereon. Notice that such petition was pending and that it was set for hearing on May 31, 1911, was given by publication addressed to the city and its citizens, as by the act required. On January 3, 1912, appellant city appeared to the proceeding, and filed a demurrer to the petition, stating as grounds that the court was without jurisdiction of the subject-matter, which demurrer the court overruled. This ruling presents the first question on this appeal.

Appellee concedes that the jurisdiction of the circuit court to hear and determine petitions such as the one involved here is conferred solely by §3, *supra,* while appellant city contends that such section applies only where the municipality is dormant. The section, as far as is material to the present discussion, is as follows: "Whenever any person * * * interested therein, or the owner * * * of any lot * * * in any incorporated city or town or which is not a corporation in active operation shall desire to vacate any street, alley or public ground therein or any part thereof adjoining such lot * * *, such person * * * shall file with the circuit court * * * his * * * petition", etc. Appellant's argument is that the word "or" following the word "town" should be read as "and", and

hence that the statute, as so read, confers on circuit courts jurisdiction to determine a petition for the vacation of a street or alley only where such street or alley is situated within the corporate limits of a city or town, which is not "in active operation" as such; that since the city of Richmond is a municipal corporation performing its functions as such, the trial court was not clothed with jurisdiction of the subject-matter of this proceeding. Appellant, at least by implication, concedes that if "and" should not be substituted for "or", as indicated, it is wrong in its position. To sustain such contention, two arguments are advanced: First, that otherwise, the expression "in any incorporated city or town or which is not a corporation in active operation", and especially the relative clause contained therein, is without meaning; and second, that in cases where municipal corporations are maintaining their full quota of officials, and are conducting all. their departments of government, the statutes independent of §3, *supra,* makes full .provision for the vacation of streets and alleys, and hence, that the section should be construed as not applying to such cases.

It is apparent that the section is not a model of verbal or grammatical accuracy. However, we should not be warranted in doing violence to its language unless to do so is necessary in order that it may be rendered intelligible, and that only thereby may the wording employed be made to harmonize with the evident legislative intent. A situation may arise in either an active or a dormant municipal corporation, calling for the vacation of a public street or alley. The section provides merely that the lot owner may file with the proper circuit court a petition to that end, regardless of whether the particular city or town is "in active operation" as a governmental subdivision of the State. If the electorate of the municipality should be so negligent or indifferent as to permit vacancies to arise and exist in the various public offices of such municipality, then, as long as such a situation con-

tinues, a street or alley in such municipality could be vacated only by conferring power to that end on some outside tribunal. There is no basic reason why such a tribunal should be clothed with such power only in case the particular municipality is dormant. In our judgment the section is reasonably intelligible, without the substitution of the words contended for. Such substitution would merely narrow, rather than clarify the section.

It is true that prior to the passage of the act of 1907, *supra,* the legislature had provided a method, yet in force, by which streets, alleys and public lands in cities and towns might be vacated, as by action of the board of public works or common council of a city, or board of trustees of a town (§§8696, 8697, 8700, 8960, 8961, 9005 Burns 1914, Acts 1905 p. 219, §§93, 94, 97, 266, 267, Acts 1909 p. 369), and since for obvious reasons, recourse could not be had to such method where the municipal corporation was not in active operation it is true that thereby the necessity arose to create a new method to that end. However, it does not follow, as already indicated, that such new method must of necessity be confined to cases where the municipal corporation is not in active operation. Giving the section the broader construction, and the result is that in the ordinary case, where the vacating of a street or alley is deemed desirable, that is, where the corporation is in active operation, recourse may be had to either one of the two proceedings. Such result seems to have been within the legislative contemplation, in that by §13 of said act (Acts 1907 p. 617, §8920 Burns 1914), it is provided that such act shall have no repealing effect "but shall be supplementary to all other laws or parts of laws on the subject hereof." The situation here presented is not unusual in the science of the law. It is at least closely related to the doctrine of the election of remedies: as where a person has suffered a wrong from a certain act of which he complains, he has in many instances a right to choose between different remedies the one which he will pursue.

Our statute affords us a number of examples of cumulative remedies, or of more than one procedure by which the same or a similar end may be attained: as in establishing public ditches and their repair; bringing into the record the court's instructions to the jury; contesting the validity of wills, etc. "Two or more separate laws may establish the same right, or provide redress for the same wrong. And the person seeking to enforce the right or avenge the wrong may proceed on the law he chooses." *Robinson* v. *Rippey* (1887), 111 Ind. 112, 12 N. E. 141. See, also, *Sefton* v. *Board, etc.* (1903), 160 Ind. 357, 66 N. E. 891.

In the matter under consideration, some weight should be given to the fact that §3, *supra*, as by us construed herein, has been actually applied by both the Supreme Court and this court, although the question here under discussion was not there presented. *City of Peru* v. *Cox* (1909), 173 Ind. 241, 90 N. E. 7; *Southern R. Co.* v. *Town of French Lick* (1913), 52 Ind. App. 447, 100 N. E. 762. We hold that the court had jurisdiction of the subject-matter of this proceeding.

In order to discuss properly the remaining points presented, it is necessary that we set out certain provisions of said act, and especially on the question of notice. Section 3, *supra*, requires that "notice of the filing and pendency of said petition shall be given as in this act provided." Section 9 (Acts 1907 p. 617, §8916 Burns 1914), to the extent that it is material to the present discussion, is as follows: "Whenever notice is required to be given for any purpose by any of the provisions of this act, notice [shall be given] by publication for ten days by two successive weekly publications in some newspaper, weekly, daily or daily except Sunday * * *." Section 3, *supra*, further provides that "if no objection within such time be made in writing by any party interested, the court shall grant the prayer of the petitioner." Section 4 (Acts 1907 p. 617, §8911 Burns

1914), authorizes a remonstrance, and specifies the grounds. The notice here fixes May 31, 1911, as the time when the petition should be heard and determined. Except in a respect not material to the present discussion, and as hereinafter mentioned, the sufficiency of the notice is not attacked.

3. Appellant city on January 30, 1912, filed a petition for permission to file a remonstrance, which petition included a number of objections to the vacation of the alley, none of which come strictly within the provisions of §4, *supra*, which specifies the grounds on which a person feeling himself aggrieved may remonstrate. The court on motion struck out the petition to remonstrate, and the appellant urges that the court thereby erred. The ruling was correct. *City of Peru* v. *Cox, supra.*

4. Afterwards appellant city, and also appellants, John B. Dougan and Helen M. Dougan, filed their respective motions to suppress the proof of publication of notice, which motions were overruled, and on a hearing, judgment was entered vacating the alley. Appellants respectively present that the court erred in overruling said motions. The basis of said motions is that the Richmond Morning News, being the newspaper in which the notice appeared, was at that time published each day of the week except Monday. It is urged that therefore said newspaper is not such a one as is specified by §3, *supra*. That section requires that notice be given by two successive weekly publications "in some newspaper, weekly, daily or daily except Sunday." In order that said newspaper may be classed among those specified, it must be held to have been a daily newspaper. Where the question was whether a newspaper published regularly each day of the week except Monday was a daily newspaper, it was said: "It was a daily newspaper in the sense of the statute, which employs the term 'daily newspaper' in contradistinction to the term 'weekly', 'semi-weekly', or 'tri-weekly' newspapers. The term was

used and is to be understood in the usual popular sense; and in this sense it is clear that a paper which, according to its usual custom, is published every day of the week except one, is a daily paper." *Richardson* v. *Tobin* (1872), 45 Cal. 30. See also, *Kingman* v. *Waugh* (1897), 139 Mo. 360, 40 S. W. 884; *Tribune Pub. Co.* v. *City of Duluth* (1890), 45 Minn. 27, 47 N. W. 309; *Puget Sound Pub. Co.* v. *Times Printing Co.* (1903), 33 Wash. 551, 74 Pac. 802.

The situation here is somewhat different from a case where a preliminary public improvement resolution is required to and does designate a certain newspaper as the medium of notice, and the notice is in fact inserted in some other paper. The persons interested might be misled by such an irregularity. Here, we have no doubt that said newspaper was popularly classed by the citizens of Richmond as a daily paper, and judged by the standard of popular classification, it would follow that said newspaper was included among the classes designated. The use of the term "daily except Sunday" is some indication that the term "daily" was used in a more technical sense than the merely popular, yet in our judgment, the term is used in the latter sense. It follows that the court did not err in overruling said motions.

There being no error in the record, the judgment is affirmed.

NOTE.—Reported in 107 N. E. 550. As to vacation of streets, its effects and the remedies of persons prejudiced, see 46 Am. St. 493. As to "or" and "and" in statute or ordinance, see Ann. Cas. 1913 A 1058. "Daily" newspapers, see 16 Ann. Cas. 421. See, also, under (1) 36 Cyc. 1114; (2) 28 Cyc. 840; (3) 31 Cyc. 521; (4) 29 Cyc. 697.