Jones, J.
 

 The plaintiff in error contends that the city failed to comply with Section 3895, General Code, which provides that the city council shall publish notices of this character in a newspaper of general circulation within the city. That section found early lodgment in the Municipal Code, and were that the only section involved in the present proceeding, this court would be constrained to hold that notices of assessments should be published in compliance with the provisions of that section,
 
 i. e.,
 
 in newspapers of general circulation within the municipal corporation, and to hold, furthermore, that the City Bulletin was not a newspaper of general circulation. However on March 25, 1925, the Legislature of Ohio adopted what is
 
 *221
 
 known as Section 4676-1, General Code. That section authorizes charter cities to adopt a method of publication other than that provided in Section 3895, General Code, if they so desire. That section reads in part as follows:
 

 “Municipal corporations now or hereafter operating under a special charter adopted in accordance with the constitution of the state of Ohio, which charter provides for or authorizes in whole or in part a method of procedure in the passage and publication of legislation, the making of improvements and the levying of assessments differing from the method prescribed by general law, may pass and publish such legislation, make such improvements and levy such assessments either under the provisions of the general law or in accordance with the procedure so provided for or authorized by such local charter. ’ ’
 

 The city charter provides that every ordinance must be published either in a newspaper of general circulation in the city, “ora newspaper regularly published under authority of council. ’ ’ Pursuant to this charter authority the city council adopted Section 48 of the Code of Ordinances which established the City Bulletin as “an official newspaper of the city of Cincinnati;” and it also adopted Section 48-3, which provided that the City Bulletin should contain all the ordinances, resolutions, notices, advertisements, official reports, proposals for bids and other various matters authorized by the city council.
 

 Whether the city of Cincinnati, as a charter city, could ignore the statute law.by providing a different method of publication from that required by statute, is now academic, for the obvious reason that Section 4676-1, General Code, now plainly authorizes a charter city to provide its own methods of procedure and publication in making improvements and levying assessments ; and such methods should be sanctioned by the courts if the legislative steps have been strictly fol
 
 *222
 
 lowed and the owner assessed has been given such notice as will meet the requirement of due process of law. The contention of counsel for plaintiff in error is that the operative effect of Section 4676-1, General Code, and of the ordinance adopted pursuant thereto, deprives their client of due process. They insist that any ordinance selecting for the publication of assessment notices a paper having only 323 subscribers, in a city containing a population of 445,000, is an unreasonable exercise of legislative discretion, gives inadequate notice to the property owner and thereby violates the due process clause of the Constitution. Whether such publication would have been sufficient had it been inserted in a recognized newspaper with such limited subscription we do not feel called on to decide since we base our decision upon the fact that the publication was not made in a
 
 newspaper
 
 as required by the terms of the city charter.
 

 If the city council selected as its medium of publication a periodical which cannot legally be defined as a “newspaper” it ignored not only its ordinance but its charter authority, which plainly require notice of assessments to be published in a newspaper. The City Bulletin was not a newspaper as defined by the lexicographers or by judicial decisions. Its publication was confined solely to the proceedings of the city and its municipal officers; it contains no news of other public bodies, nor any notices of general current events, either local or foreign. Had news of that character been published it might possibly have increased its list of subscribers. While various publications, such as legal journals and the like, may be devoted chiefly to their particular business or profession, if they also devote their columns to the dissemination of news that is of importance and of general interest to the public, the courts have generally recognized such publications
 
 *223
 
 as partaking the character of and falling within the definition of a newspaper.
 
 Hanscom
 
 v.
 
 Meyer,
 
 60 Neb., 68, 82 N. W., 114, 48 L. R. A., 409, 83 Am. St. Rep., 507;
 
 Pentzel
 
 v.
 
 Squire,
 
 161 Ill., 346, 43 N. E., 1064, 52 Am. St. Rep., 373;
 
 In re Labor Journal,
 
 190 Cal., 500, 213 P., 498;
 
 Olsen
 
 v.
 
 Bibb Co.,
 
 117 Minn., 214, 135 N. W., 385, Ann. Cas., 1913D, 877;
 
 Lynch
 
 v.
 
 Durfee, Judge of Probate,
 
 101 Mich., 171, 59 N. W., 409;
 
 Kerr
 
 v.
 
 Hitt,
 
 75 Ill., 51;
 
 Lynn
 
 v.
 
 Allen,
 
 145 Ind., 584, 44 N. E., 646, 33 L. R. A., 779, 57 Am. St. Rep., 223;
 
 Brice
 
 v.
 
 Graves,
 
 142 Iowa, 722, 121 N. W., 504;
 
 Hall
 
 v.
 
 City of Milwaukee,
 
 115 Wis., 479, 91 N. W., 998;
 
 Turney
 
 v.
 
 Blomstrom,
 
 62 Neb., 616, 87 N. W., 339;
 
 Puget Sound Publishing Co.
 
 v.
 
 Times Printing Co.,
 
 33 Wash., 551, 74 P., 802;
 
 State, ex rel. Yaegar,
 
 v.
 
 Rose, Judge,
 
 93 Fla., 1018, 114 So., 373. Without further extending this opinion, we shall allude only to the Florida case,
 
 supra,
 
 citing in its support a number of cases portraying the attributes of a newspaper, a part of its syllabus reading as follows: “The term ‘newspaper’ as used in our constructive service statute must have reference to some publication appearing at daily or weekly intervals, reporting the news or happenings of local or foreign interest, or both, such as social, religious, political, moral, business, professional, editorial, and other kindred subjects intended for the information of the general reading public.” The foregoing citations as well as other cases fully support such statement.
 

 Measured by the definition of a newspaper usually given by lexicographers and by court decisions, since the City Bulletin contains publication of the activities of the city only, and no other news, we hold that the City Bulletin is not a newspaper within the meaning of that term as used in the ordinance and city charter. The judgments of the lower courts are reversed, and
 
 *224
 
 judgment will here be rendered in favor of the plaintiff in error.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Allen, Stephenson and Matthias, JJ., concur.
 

 Kinkade, J., not participating.