[No. 5764. Decided December 20, 1905.]

ED. E. WARNER, *Respondent*, v. SERENA E. MINER *et al.*, *Appellants.*[1]

TAXATION — FORECLOSURE OF LIEN — SUMMONS — SUBSCRIPTION. Under Bal. Code, § 4882, the original summons for publication in a tax foreclosure is sufficiently "subscribed" by the attorney for the plaintiff although the signature is printed..

SAME—NOTICE—SUMMONS BY PUBLICATION—NEWSPAPER PRINTED AND PUBLISHED IN COUNTY—PROOF—SUFFICIENCY. Under Bal. Code, § 4878, requiring the publication of a summons to be made in a newspaper printed and published in the county, service by publication is sufficient where the paper was printed at S. in said county and sent to and distributed at I. in said county, although the proof of publication is to the effect that it was printed and published at I.

SAME—NEWSPAPER—WHAT IS—EVIDENCE—SUFFICIENCY. A paper eleven by sixteen inches in size, containing four pages of four columns each, filled with general and local advertisements, legal notices, and general and local news, issued regularly each week, with a local circulation of 300 paid subscribers in a town of about 400 people, is a newspaper of general circulation in which the publication of summons is authorized.

SAME — RESIDENCE OF DEFENDANTS — DUTY OF PLAINTIFFS TO INQUIRE—STATUTE. An affidavit for the publication of a summons stating that two of the defendants are nonresidents and that their

[1]Reported in 82 Pac. 1033.

addresses are unknown, is sufficient to authorize the publication of a summons, although it was shown that the affiant knew that said defendants had acknowledged a deed before a notary of a certain county in another state, no duty devolving upon him to ascertain the addresses of the defendants by inquiry of such notary.

JUDGMENT — DEFAULT — INCORPORATION IN JUDGMENT.    It is not necessary upon taking judgment by default to enter the default in a separate order.

SAME—DATE—CLERICAL ERROR.    A clerical error of the county clerk in recording a judgment by filling up a blank for the date six days later than the filing date is immaterial, as the date of the judgment was the date of its filing.

TAXATION—FORECLOSURE—JUDGMENT—FORM—WHAT TO CONTAIN. Under Laws 1899, p. 99, § 18, prescribing the form for a judgment upon the foreclosure of a tax lien, and providing that the court shall order and direct the clerk to make out an order for the sale of the property, a judgment containing an order upon the treasurer to sell the tracts is a sufficient order of sale and a certified copy of the judgment signed by the judge and attested by the clerk is all that is required.

JUDGMENTS—VACATION OF DEFAULT—NEGLECT OF AGENT—SUFFI- CIENCY.    Nonresident owners of property sold for taxes do not show sufficient ground for vacating the judgment by showing that their agent, a resident of the state, who held the fee and owned an equi- table interest in the land, and who had paid the taxes up to a certain time, promised to pay the taxes but had failed to do so.

Appeal from an order of the superior court for Snohomish county, Yakey, J., entered March 30, 1905, in favor of the plaintiff, after a hearing on the merits, denying defendants' application to vacate a judgment foreclosing tax liens.    Af- firmed.

*Brady & Gay,* for appellants.
*Brownell & Coleman,* for respondent.

MOUNT, C. J.—This appeal is from an order denying an application to vacate the judgment in a tax foreclosure suit. The application was made in the original action by motion and petition combined.    The record in the case shows that the taxes on certain real estate, for the years 1899, 1900, and 1901, became delinquent, and certificates of delinquency were

purchased by respondent, who, in June, 1903, commenced proceedings in the superior court of Snohomish county, where the land is located, to foreclose such certificates. The sheriff of said county made a return of the summons, to the effect that none of the defendants could be found in said county. One of the attorneys for the plaintiff in that proceeding thereupon made and filed an affidavit to the effect that all of the defendants were nonresidents of the state, and that the place of residence of each of the defendants was unknown to the affiant and the plaintiff. Thereupon service of summons was made by publication.

After the expiration of sixty days from the date of the first publication of the summons, and on August 13, 1903, a judgment of foreclosure was entered, which judgment directed the county treasurer of said county to sell the premises, or so much thereof as was necessary to satisfy the judgment. The county treasurer advertised the property for sale, and subsequently, on August 29, 1903, sold the same, and respondent became the purchaser at such sale. On June 10, 1904, appellants filed their application to vacate the judgment. After a hearing upon the merits, the application was denied. The facts alleged in the petition and shown on the hearing will be stated in connection with the points upon which appellants rely for a reversal.

(1) Appellants first contend that the court acquired no jurisdiction to enter the judgment, because the service was acquired by publication, and the original summons which was published contained the printed names of the attorneys, while the statute requires the summons to be *"subscribed"* by the plaintiff or his attorneys. Appellants insist that the printed signature is insufficient. No authority is cited to sustain this contention. Our statute provides that proof of service shall be by affidavit of the publisher showing the same, "together with a printed copy of the summons as published" (Bal. Code, § 4882), which indicates that the published summons may contain the subscriber's name printed; and it has

been held that, where the statute requires the summons to be subscribed by the plaintiff or his attorney, it is not essential that the signature shall be written in the hand of the plaintiff or his attorney. A printed or stamped signature is sufficient when it is adopted as the signature of either. *Mezchen v. More,* 54 Wis. 214, 11 N. W. 534; *Herrick v. Morrill,* 37 Minn. 250, 33 N. W. 849; 7 Words & Phrases, p. 6729. This is, without doubt, the correct rule.

(2) The statute requires that the publication of a summons shall be made in a newspaper printed and published in the county where the action is brought Bal. Code, § 4878. The affidavit of publication stated that the summons was published in the "Index Miner," a newspaper of general circulation "printed and published at Index, in Snohomish county, Wash." At the trial the publisher testified that the newspaper was printed at Snohomish, and sent to the town of Index where it was distributed through the mails to its subscribers. Appellants contend that the affidavit of the publisher was therefore false, and that the jurisdiction of the court, depending upon the truthfulness of the affidavit, must therefore fail. While the newspaper was not printed at Index, it was, under this showing, published at that place. The fact that it was not printed at Index is wholly immaterial, because the statute requires only that the newspaper shall be printed and published in the county. Both Snohomish and Index are within Snohomish county, and the affidavit therefore complied with the statute, even though the affidavit stated it was printed at Index, when as a fact it was printed at Snohomish in said county. The misstatement of an immaterial fact is not fatal.

(3) Appellants contend that the paper in which the summons was published is not a newspaper within the meaning of the statute. A copy of the paper is attached to the record as an exhibit. It is eleven by sixteen inches in size and contains four pages, four columns to the page, and is filled with general and local advertisements, legal notices, and gen-

eral and local news items, and has all the appearances of a small newspaper. The publisher testified that at the time of the trial the newspaper had a local circulation of about three hundred paid subscribers in the town of Index, which contained a population of about four hundred people, and that the paper had an outside circulation throughout the state of about one hundred copies, and that when the summons in question was published the paper had a circulation somewhat greater than at the time of the trial; that it was issued regularly each week, and had been so issued for several years. Under the rule announced in *Puget Sound Pub. Co. v. Times Print. Co.*, 33 Wash. 551, 74 Pac. 802, this was a newspaper of general circulation in which summons was authorized to be published.

(4) It is conceded that no copies of the complaint or summons were mailed to the defendants, and respondent testified that he knew there was a deed on record in Snohomish county which was acknowledged before a notary public in Siskiyou county, California, by two of the defendants, and by the other defendant before a notary public in Hennepin county, Minnesota. An affidavit was filed in which it was stated that neither the respondent nor his attorneys knew the place of residence of the appellants, nor any of them. It is not contended that this affidavit was false, but it is claimed that the information above stated in relation to the deed which was of record in Snohomish county made it the duty of respondent to inquire, and that a reasonable inquiry would have revealed the residence of defendants.

The statute does not impose the duty on a plaintiff to inquire as to the residence of nonresident defendants. It simply requires him to state the fact that such residence is not known to the affiant. Bal. Code, § 4877. But conceding, without deciding, that the plaintiff must use reasonable diligence to find the residence of a defendant, we think there is nothing here which, by the use of such diligence, would have disclosed the residence of the defendants. It is not shown when

the deed was acknowledged.    It is not claimed that the post-office addresses of the notaries or of the defendants were given in the deed on record.    It is claimed that the notaries at the times the acknowledgements were taken were within certain counties.    It is also claimed that the respondent, by writing letters to the county officers of such counties, could have located the notaries, and then the notaries could have located the defendants, and that the information could thus have been acquired.    It is probable that the residences of the defendants might have been discovered in that way, but it does not follow that the county officers would have known the addresses of the notaries, or that the notaries would have known the addresses of the defendants at the time the suit was brought, because all may have changed their residences from the places where they resided when the deed was acknowledged.    At any rate, it would have required more than ordinary diligence to have found the addresses of defendants in this roundabout way; and since no duty was imposed by statute upon the plaintiff to inquire, he was not bound to make such extraordinary inquiry.

(5)    No formal entry of default was entered before the judgment was taken, and appellants claim this as an irregularity.    The appellants were in default as a matter of fact.    The judgment recites: "This cause having this 19th day of August, 1903, been brought on to be heard upon the application for judgment foreclosing tax liens herein, on default of each of the above named defendants, which said default is hereby granted and allowed by the court."    It was not necessary for the court to enter a default against the defendants in a separate order.    It is common and correct practice to enter the default in the final judgment.

(6)    The judgment recites, "This cause having this 19th day of August, 1903, been brought on to be heard."    Then follows the findings and judgment, and finally the signature of the trial judge.    This final order bears the clerk's filing mark, "Filed August 13, 1903.    G. W. Adamson, County

Clerk." Appellants contend that this irregularity is sufficient upon which to vacate the judgment. The clerk when called as a witness testified that the judgment was filed on August 13, 1903, with the date at the beginning of the judgment left blank; that the judgment was entered on the journal in his office a few days later, when he mistook the figure 3 for a 9, and by such mistake filled in the blank at the beginning of the judgment with the figures 19, and thus made the judgment appear to have been filed six days before it was signed by the judge. This was clearly a clerical error which amounted to no irregularity. It could not have been filed before it was signed. The date of a judgment is the date of its filing. *Quareles v. Seattle*, 26 Wash. 226, 66 Pac. 389.

(7) Appellants next contend that the form of the judgment is not in accordance with the requirements of the statute. The judgment order, after finding certain facts, recites:

"That plaintiff herein be given judgment against the property hereinbefore mentioned for the aforesaid amount of plaintiff's lien with costs amounting to $25.80, which said judgment shall be a several judgment against each tract or lot or part of a tract or lot of land hereinbefore mentioned in the amounts set opposite thereto, as follows."

Then follows a description of each tract of land, with the amount of taxes delinquent and amount paid for the years after delinquency, and accrued interest and costs, and the total amounts of the judgment against each tract. Then follows an order upon the treasurer to sell the said tracts, according to law, to satisfy the judgment, with interest and accruing costs. The judgment and order is signed by the judge and attested by the clerk. No form of judgment order in tax foreclosure proceedings is provided by statute. But the law provides:

"The court shall give judgment for such taxes, assessments, penalties, interest and cost as shall appear to be due upon the several lots or tracts described in said notice of application for judgment or complaint, and such judgment shall

be a several judgment against each tract or lot or part of a tract or lot for each kind of tax or assessment included therein, including all penalties, interest and costs, and the court shall order and direct the clerk to make out and enter an order for the sale of such real property against which judgment is made, or vacate and set aside the certificate of delinquency or make such other order or judgment as in law and equity may be just. Said order shall be signed by the judge of the superior court and attested by the clerk thereof and a certified copy of said order, together with a list of the property therein ordered sold shall be delivered to the county treasurer, and shall be full and sufficient authority for him to proceed to sell said property or so much of each tract or lot as may be necessary for said sum as set forth in said order and to take such further steps in the matter as are provided by law." Laws 1899, pp. 299-300, § 18.

Appellants argue that the provision that, "the court shall order and direct the clerk to make out and enter an order for the sale of such real property against which judgment is made," is required to be a part of the judgment, and that the court, by reason of its limited jurisdiction, has no power to enter a judgment which does not contain a direction to the clerk to make out and enter an order of sale. There is no merit in the contention that the judgment order itself shall contain a direction to the clerk to make out and enter an order of sale, because the statute does not require it. It says the court shall order and direct the clerk to do so. This order and direction, no doubt, may be made in a separate order, or it may be made orally, or may be acted upon by the clerk without special direction. The judgment itself is such an order. When the order of sale is issued or made out, it shall be signed by the judge and attested by the clerk, and a certified copy delivered to the county treasurer. The statute does not provide a form for the order of sale. We have no doubt that a certified copy of the judgment, signed by the judge and attested by the clerk, which judgment orders the property to be sold, is an order of sale in strict compli-

ance with the provision of the statute above quoted. There is, therefore, no irregularity in the form of the judgment.

(8) Appellants next contend that the judgment should be vacated within the year upon the ground of excusable neglect. The record shows that the appellants are now, and have been at all times, non-residents of this state; that they acquired the land in question in 1890 or 1891; that they owned the fee, and one B. Mullen, a resident of this state, owned an equitable interest in the land; that Mr. Mullen paid the taxes up to 1896 or 1897, and then promised appellants that he would continue to pay the taxes in the future, having money of appellants for that purpose. Appellants gave no more attention to the land until 1903, when J. U. Miner, one of the appellants, requested a friend to find a purchaser for the land. This friend, in September, 1903, reported that the land had been sold for taxes to respondent. Appellants thereupon began negotiations for a settlement with respondent, but no agreement was reached. Thereupon these proceedings were commenced. Conceding that the vacation of default tax judgments falls within the provisions of Bal. Code, § 4880, that section cannot apply to this case, for the reason that sufficient cause has not been shown. The only cause shown is that appellants and their agents have neglected for a period of five years to pay their taxes. Under the circumstances above stated, the appellants were probably justified in relying upon their agent; but there is no excuse offered for the agent. The default of the agent is necessarily the default of the principal. This case is not distinguishable upon this point from *Williams v. Pittock,* 35 Wash. 271, 77 Pac. 385; *Whitney v. Knowlton,* 33 Wash. 319, 74 Pac. 469; or *Swanson v. Hoyle,* 32 Wash. 169, 72 Pac. 1011.

We find no error in the record. The judgment is therefore affirmed.

DUNBAR, CROW, HADLEY, RUDKIN, and FULLERTON, JJ., concur.