[No. 23098. · Department One. September 1, 1931.]

H. F. W. BEUTELSPACHER *et al., Appellants,* v. SPOKANE
SAVINGS BANK *et al., Respondents and Cross-
appellants.*[1]

[1]Reported in 2 P. (2d) 729.

228

*Farley, Young & Farley, F. A. Garrecht, A. O. Colburn,* and *Powell & Herman,* for appellants.

*Post & Russell, Hamblen & Gilbert,* and *Chas. P. Lund,* for respondents and cross-appellants.

MAIN, J.—The plaintiffs and the intervener in this action were shareholders in the Spokane Savings & Loan Society; the defendants are the Spokane Savings Bank, the Spokane Savings & Loan Society, and the officers and directors of those two corporations. The purpose of the action was to have declared illegal and void the transfer of the assets of the Building & Loan Society to the Savings Bank. The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that the dissolution of the Spokane Savings & Loan Society and the sale and transfer of all of its property and assets to the Spokane Savings Bank were in all respects regular, valid and according to law, but that all persons who objected to and voted against the resolution for dissolution of the Savings & Loan Society, and all persons who were minors, were entitled to have their respective accounts credited or paid by the Spokane Savings Bank to the amount of their respective proportionate shares in what is called the contingent or reserve fund, in addition to the amount of their deposits, plus interest. Judgment was entered in accordance with the conclu-

sions, from which the plaintiffs and intervener appeal, and the defendants cross-appeal.

The facts which will present the questions here to be determined may be summarized as follows: The Spokane Savings & Loan Society (which will be referred to as the Society) was organized in the year 1897, the term of its existence being fixed at fifty years. It was a prosperous institution, and had acquired deposits amounting to approximately fifteen million dollars. In January, 1929, the legislature of this state passed what is known as the corporation excise tax law (Laws 1929, p. 380, ch. 151). It was estimated that, under this law, the tax which the Society would be required to pay per annum would be from thirty-five to forty thousand dollars.

For many years prior to this time, the Society had paid its shareholders interest at five per cent per annum, payable semi-annually. The officers of the Society, believing that, if it was required to pay the amount of tax exacted by the law, its income would not be sufficient to maintain the five per cent dividend, formulated the plan of dissolving the Society and transferring its assets to the Spokane Savings Bank (which will be referred to as the Bank). The plan was by the president of the Society and its attorney presented to the state supervisor of savings and loan societies and an assistant attorney general, and was by them informally approved. The capital of the Bank was increased to one million dollars, which was divided into fifty thousand shares of the par value of twenty dollars per share. The board of directors of the Society and that of the Bank consisted, with one or two exceptions, of the same persons.

On Friday, October 11, 1929, the directors of the society made and passed a resolution approving the change and transferring the assets of the Society to

the Bank, and thereafter it was announced through the press that, beginning the following Monday, the intervening Saturday being a holiday, the business of the Society would be conducted by the Bank. When the Bank opened Monday, as shareholders came in they were tendered a new pass book and a card to sign, transferring their accounts from the Society to the Bank. Sometime during the month of November, the present action was begun, which, as stated, sought to set aside the transfer of the assets of the Society to the Bank.

After this action was begun, and on December 14, 1929, a meeting of the shareholders of the Society was held, and a resolution to dissolve the Society, liquidate its affairs, and make distribution among the shareholders in accordance with the law, was passed. At this meeting, the total number of shares voting for the resolution was 54,006, and the total number against was 342; the total number of ballots was 90, the number for the resolution being 71, and against, 19.

The book value of the Society's assets October 11, 1929, when the transfer was made, was $14,695,200.32; there being approximately fifty thousand shareholders. At the time of the trial, out of deposits of $14,113,610 on October 11, accounts representing $12,682,297 had been transferred by express authority of the shareholders. The accounts which had not been transferred numbered 4,954, of which 3,669 were inactive accounts of less than one hundred dollars each. The shareholders in the Society were given the right either to withdraw their entire accounts, with interest thereon up to the time of withdrawal, or to transfer the accounts to the Bank. The shareholders of the Society were also given an opportunity to take stock in the Bank, which seven hundred fifty did. The parties bringing the action, the appellants, are a small proportion of the num-

ber of shareholders, and their deposits bore about the same relation to the total deposits as the number of shareholders bringing this action bore to the total number of shareholders.

The principal and important question, as stated in the appellants' brief, is whether

" . . . the conversion and transfer of the business and assets of the Spokane Savings & Loan Society to the Spokane Savings Bank, under the circumstances of this case, was unauthorized and is illegal and void."

▇ To determine the answer to this general question, a number of more specific or particular questions must be considered; the first of which is whether the Society could be dissolved by a two-thirds vote of the shareholders present at the meeting on December 14, 1929. This depends upon whether the statute under which the Society was organized authorizes such a dissolution. *Central Transportation Co. v. Pullman Co.,* 139 U. S. 24; *Geddes v. Anaconda Copper Mining Co.,* 254 U. S. 590. Section 3742, Rem. Comp. Stat., provides that,

"Any savings and loan association incorporated under the laws of the State of Washington may dissolve itself voluntarily in the following manner:

"A majority of the board of directors shall publish a notice in some newspaper of general circulation in the county wherein is the principal place of business of the association once each week for eight consecutive weeks calling a meeting of the shareholders to determine whether said savings and loan association shall voluntarily dissolve. If at such meeting two-thirds of the shareholders then present and voting shall vote to dissolve, and the state auditor [director of efficiency] shall approve of such dissolution, the officers of the association, under the direction of the directors of the association, shall thereupon proceed to liquidate the affairs of the association and reduce the assets thereof to cash, and, after paying all indebtedness and ex-

penses, distribute the same among the shareholders in· proportion to the withdrawal value of the holdings of each shareholder at the time of the passage of the resolution to dissolve.''

It is there expressly provided that two-thirds of the shareholders present and voting are sufficient to authorize a dissolution, providing the action is approved by the director of efficiency.

This case differs from that of *Theis v. Spokane Falls Gas Light Co.*, 34 Wash. 23, 74 Pac. 1004, where it was held that an attempted dissolution of a prosperous corporation and the transfer of its assets to a new corporation, for the sole purpose of getting rid of a disagreeable stockholder who refused to sell his stock, could not be sustained. In this case, the evidence shows clearly that the officers and directors of the Spokane Savings & Loan Society, in taking the action that they did with reference to the Society and with reference to the Bank, were actuated by an honest and sincere desire to promote the interests of the shareholders of the Society. The trial court, in a memorandum opinion filed after the trial, said:

''I am convinced from the evidence that the officers and directors of the Spokane Savings & Loan Society, in taking the action that they did with reference to said Society and with reference to the Spokane Savings Bank, were actuated by an earnest desire and sincere motive to advance and promote the best interests of the shareholders of the savings and loan institution . . .''

The same thought was carried into the formal findings made by the court, and, after a consideration of the entire record, we are in accord with the view of the trial court thus expressed.

Where the statute gives authority to dissolve a corporation, and the requisite number of shareholders

·support the resolution for dissolution and liquidation, the courts will not examine into the affairs of the corporation for the purpose of determining whether the action was expedient or wise. Thompson on Corporations (3d ed.), vol. 8, page 629; *Rossing v. State Bank of Bode*, 181 Iowa 1013, 165 N. W. 254; *White v. Kincaid*, 149 N. C. 415, 63 S. E. 109, 23 L. R. A. (N. S.) 1177, 128 Am. St. 663.

 The statute giving the authority to dissolve, and there being no evidence of fraud or bad faith, the next question is whether the statute was complied with. In this connection, it is said, (a) that the published notice of the stockholders' meeting was not made in a newspaper of general circulation; and (b) that illegal votes were cast at the stockholders' meeting, and there was a wrongful denial to others of the right to vote.

As to the notice, the statute above quoted provides that it shall be published in a newspaper of "general circulation." It is also provided in the same section that if, at the meeting of the shareholders, the requisite number vote to dissolve, and the director of efficiency shall approve of such dissolution, then the officers of the association shall proceed to liquidate. In this case, the trial court found that a record of the proceedings of the meeting of the members or shareholders,

" . . . together with all proofs, documents and records, were submitted to and filed with the director of efficiency of the state of Washington on the 17th day of December, 1929, the same and such dissolution were approved, and said Spokane Savings & Loan Society legally dissolved."

In this connection, it is said by the cross-appellants that one of the necessary facts for the director of efficiency to find, before making the approval, was that a notice had been published in accordance with the

statutory requirement, and that, such officer having found in effect that fact, the question is not open for the court to determine. Without so deciding, it may be assumed, for the purposes of this case, that the effect of the finding of the director of efficiency is as claimed.

The notice in question was published for the requisite time in the Spokane Weekly Chronicle. This paper had been continuously published in the city of Spokane and circulated in Spokane county and surrounding territory for many years. At the time of the publication of the notice in question, the total subscription to the paper was approximately four hundred fifty. There was evidence that the majority of legal notices in probate and civil actions in Spokane county for many years had been published in this newspaper. The Spokane Weekly Chronicle was a newspaper of general circulation, within the meaning of the cases of *Puget Sound Publishing Co. v. Times Printing Co.*, 33 Wash. 551, 74 Pac. 802; and *Times Printing Co. v. Star Publishing Co.*, 51 Wash. 667, 99 Pac. 1040.

Assuming that the published notice was insufficient, the appellants, who were present at the meeting, are not in a position to complain, either on behalf of themselves or on behalf of other shareholders who were not present or represented by proxy. *Kearneysville Creamery Co. v. American Creamery Co.*, 103 W. Va. 259, 137 S. E. 217, 51 A. L. R. 938; *Handley v. Stutz,* 139 U. S. 417.

As to the receipt of illegal votes and rejection of legal votes, little need be said, because if all the votes which are claimed to have been cast illegally are disregarded, and all the votes which are claimed to have been wrongfully rejected are counted, there still would be voting for the resolution two-thirds of the shareholders present at the meeting. An election or

other action at a corporate meeting is not rendered invalid because of the receipt of illegal votes, or the rejection of legal votes, if the result would have been the same had they been rejected or received, as the case may be. Fletcher Cyc. Corporations, vol. 3, sec. 1677.

The next question is whether the stockholders of the Bank, who were directors of the Society, had a right to vote for the resolution for the dissolution of the Society and transfer of the assets to the Bank. It will be admitted that the directors of the Society act in a trust capacity, and are the custodian of trust funds of the shareholders. As directors of the Society, they would not be qualified to authorize the transfer of the assets to the Bank of which they were stockholders and directors; but the rule that a director may not act where his interest is adverse to the corporation does not apply in the case of the stockholder, because he may vote his stock as he pleases for the purpose of his own interest. *Windmuller v. Standard Distilling Co.*, 114 Fed. 491; *Green v. Bennett*, 110 S. W. (Tex. Civ. App.) 108; *Rossing v. State Bank of Bode*, 181 Iowa 1013, 165 N. W. 254. The meeting of the stockholders was carried on in accordance with the statutory requirements.

The next question is whether the assets of the Society were transferred to the Bank for a consideration which represented a fair price and was the full value thereof. Upon this question the evidence is in conflict; that offered by the appellants, if accepted, would indicate that the consideration was less than the value; on the other hand, the testimony offered by the cross-appellants would sustain the value at which the assets were taken over. This presents a question of fact. The trial court found that

"The consideration received by the Society, and the purchase price paid by the Spokane Savings Bank therefor, was a full and fair consideration and in all respects adequate and sufficient."

It would serve no useful purpose and would extend this opinion, which is already overlong, to attempt to review the evidence upon this question. It is sufficient to say that, after considering the evidence, we think the trial court reached the correct conclusion.

The appellants make two other contentions which are of minor importance, and which it is unnecessary here to consider in detail, because if the court was in error (and we do not think it was) in either one or both of the matters complained of, a reversal of the judgment would not be required.

Upon the cross-appeal, little need be said. Section 3731, Rem. Comp. Stat., in part provides for the enforcing of withdrawal of shares, and provides that the holders thereof shall be paid the full value of the shares, including, in such case, their proportionate value of the contingent fund. That was what the trial court allowed the parties to this action and to all persons who were minors at the date of the meeting, which was held on December 14, 1929, and we are of the opinion that the holding should be approved.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.