[No. 27626. Department Two. July 15, 1939.]

KING COUNTY *et al., Petitioners,* v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

Reported in 92 P. (2d) 694.

592

*B. Gray Warner, Wm. Hickman Moore,* and *Hough-ton, Cluck & Coughlin,* for petitioners.

*Hare, Turner & Maurier,* for respondents.

BEALS, J.—May 8, 1939, Russell H. Fluent, Jack Taylor, and Tom Smith, the duly elected, qualified, and acting county commissioners of King county, Washington, petitioners herein, awarded to the Washington Commonwealth Federation the contract for the county printing, for the period beginning July 1, 1939, and ending June 30, 1940.

May 23d, C. W. Malcolm, as plaintiff, filed his complaint before the superior court, alleging that he was a resident and taxpayer of King county, and that he instituted his action on his own behalf and on behalf of all other taxpayers of King county similarly situated and affected; that King county is a municipal corporation, and that Messrs. Fluent, Taylor, and Smith were its duly elected, qualified, and acting county commissioners; that the defendant Washington Commonwealth Federation (hereinafter referred to as the WCF) is a corporation; that the last named defendant submitted its bid for the county printing in the name of "Washington New-Dealer" (which it appears is the name of the publication printed and circulated by the

WCF); and that the county commissioners will enter into formal contract with the WCF for the publication of certain official county printing during the period above mentioned.

Plaintiff further alleged that the "Washington New-Dealer" is not a newspaper of general circulation, within the meaning and intent of the law, but is a paper devoted exclusively to the interests, objects, purposes, and aims of the WCF, which are to formulate an economic and legislative program designed to effectuate a planned economy in the state of Washington based upon production for use rather than for profit, and to formulate plans and platforms with reference to current economic and legislative problems; and that the paper above named is read exclusively by members of the WCF and its affiliates, and therefore not a newspaper of general circulation in King county, or elsewhere.

Plaintiff further alleged that the cost of printing official notices on the order of King county would greatly exceed twelve thousand dollars; and that, if published in the "Washington New-Dealer," the notices would be void, and the collection of county taxes delayed, to the damage of plaintiff and other taxpayers of King county.

Plaintiff alleged that there were newspapers printed and published in King county, qualified under the law to publish official notices on behalf of King county; that the action of the county commissioners in awarding the contract for the county printing to the WCF was unlawful; and that, if the county commissioners should enter into a formal contract with the WCF, plaintiff and other taxpayers would suffer irreparable damage.

After alleging that no speedy or adequate remedy at law existed, plaintiff asked that the defendants

King county and its commissioners be restrained and enjoined by the court from entering into the contemplated contract, and that the court require the defendant commissioners to vacate and rescind their act of May 8, 1939, purporting to award to the defendant WCF the contract for the county printing.

The defendant Washington Commonwealth Federation answered plaintiff's complaint, denying certain allegations thereof, and particularly that any county notices or publications would be void if published in the "Washington New-Dealer," and alleging that that newspaper meets all the requirements of law for the publication of legal notices. The defendant WCF also demurred to plaintiff's complaint, upon the grounds that the court had no jurisdiction over the person of the defendants or the subject matter of the action; that the plaintiff had no legal capacity to sue; that there was a defect of parties plaintiff; and that the complaint failed to state facts sufficient to constitute a cause of action.

The action was tried to the court, sitting without a jury, and, the court having first overruled demurrers interposed by the defendants, and it having been stipulated that the other named defendants would join in the answer filed by defendant WCF, the court made and entered findings of fact and conclusions of law in plaintiff's favor, followed by a decree enjoining the defendant commissioners from entering into any formal contract or agreement with the defendant WCF for the printing of legal notices during the period commencing July 1, 1939, and ending June 30, 1940, and from inserting any legal notices of defendant King county in the paper known as the "Washington New-Dealer." The defendant commissioners were also ordered to vacate and rescind their action of May 8, 1939, awarding to defendant WCF the contract for the

county printing between the dates above referred to. The defendants' motion for a new trial was also argued and submitted to the court, and by the court denied.

King county, a municipal corporation, its commissioners above named, and Washington Commonwealth Federation, a corporation, on the 6th day of June, 1939, filed in this court their application for a writ of certiorari directed to the superior court of King county and the Honorable H. G. Sutton, as judge thereof, seeking to review before this court the decree of the superior court above referred to. An order to show cause why a writ of certiorari should not issue from this court having been duly entered and served, full return to the order to show cause was made, and the matter was argued and submitted to this court upon a full record of the proceedings which took place before the trial court.

Petitioners contend that the trial court erred in overruling defendants' demurrers to the complaint; in receiving expert testimony as to the meaning of the statutory phrase "newspaper of general circulation;" in denying defendants' challenge to the sufficiency of the evidence to justify a temporary injunction; in proceeding to a trial upon the merits; on the making of two findings of fact and two conclusions of law; and upon the denial of defendants' motion for a new trial.

In view of the emergency created by the matters determined by the trial court, we hold that the judgment of the trial court is reviewable before this court by way of a writ of certiorari.

Rem. Rev. Stat., § 4080 [P. C. § 1844], provides for the making by the county commissioners, once each year, of a contract for the county printing. The section referred to reads as follows:

"In all counties where two or more weekly, semi-weekly or daily newspapers are published, it shall be

the duty of the county commissioners, at their April meeting each year, to let the advertising and official publication of all notices to the publisher thereof who is the best and lowest responsible bidder:  Provided, that in all cases the county commissioners shall consider the question of circulation in awarding the county printing contract, with a view to giving said printing the widest publicity; and no newspaper shall be eligible as a competitor, nor shall a contract be let to any newspaper, unless the same shall have been established, published and circulated in the county for at least six months, and has a general and bona fide circulation throughout the county in which it is published:  Provided, further, that in counties where there is no newspaper published, the commissioners of such county shall cause the printing of said county to be done in some newspaper in the state, of general circulation in the county, having no resident newspaper, and the newspaper to which such contract is let, shall be designated as the official newspaper of the county:  Provided further, that the county commissioners shall require a bond in double the amount involved in the contract, for the correct and faithful performance of all such contracts and the work to be done thereunder:  Provided, further, that the term of the successful bidder shall not commence until the first day of July succeeding the letting of such contract."

In the case of *State ex rel. Republic Publishing Co. v. McPhee,* 188 Wash. 543, 62 P. (2d) 1355, this court, sitting *En Banc,* held that, in the letting of a contract for county printing, under the statute above referred to, the county commissioners do not exercise judicial power, but only administrative and discretionary powers, and that no appeal from their action to the superior court would permit a trial *de novo* before that court.  It was held that the courts would review the action of the commissioners only if it appeared that they had acted arbitrarily or capriciously.  This court held that the statute above quoted vested in

". . . the board of county commissioners a discretion within certain fixed limits, which are not here involved, and, as we see it, the only question now presented is whether or not the evidence preponderates against the findings made by the trial court in any material respect."

In the case cited, the superior court upheld the action of the commissioners in letting the contract, and the judgment of the superior court was here affirmed.

In the case at bar, the trial court found that the county commissioners had properly called for bids, and it clearly appears that several bids were received, including one from the WCF, which bid was accepted by a majority vote of the board. The court further found that the successful bidder filed a proper bond in support of its bid. The court then found that the newspaper printed and published by the successful bidder, which newspaper is known as the "Washington New-Dealer," was not a newspaper of general circulation within the meaning of the statute, but on the contrary, was

". . . a paper devoted exclusively to the interests, objects, purposes and aims of said defendant Washington Commonwealth Federation and organizations affiliated therewith, and said paper throughout its existence has appealed exclusively to members of said Washington Commonwealth Federation and its affiliates and sympathizers."

The court also found that the objects of the WCF, as set forth in its articles of incorporation, were as follows:

"(1) To promote the general welfare of the people of the state of Washington, by means of educational, economic and political action pursuant to the by-laws (constitution) of this Federation.

"(2) To formulate an economic and legislative program designed particularly to effectuate a planned economy in the state of Washington, based upon pro-

duction for use, rather than for profit; and to formulate plans and platforms with reference to current economic and legislative problems.

"(3) To correlate and unify the activities of all affiliated organizations, to the end that the program, plans and platforms of this Federation will be realized.

"(4) To organize committees, groups and clubs in legislative districts, counties, and other political subdivisions.

"(5) To publish and distribute bulletins, pamphlets, newspapers and periodicals;"

that, while some evidence was introduced to the effect that the objects and purposes of the WCF were modified from time to time by action of its conventions, and that "production for use" was no longer one of its objects and purposes, its articles of incorporation had not been amended; and that it clearly appeared that its objects were political, social, and economic in nature, and of a controversial character, and that the views expressed thereby were shared by only a portion of the community. The court also found that the newspaper in question presented only its program from the viewpoint of an advocate, and only such news items as related to that program, and that these news items were so printed in its columns "that they are not in fact news stories, but articles of advocacy." The court further found that the newspaper does not print news of interest to the general reader, and that its contents appeal to the members of the WCF and

". . . those who share their social, economic and political philosophy, exclusively, and therefore, said paper does not have a general circulation in King county or elsewhere."

The court also found that there were several other newspapers printed and published in King county, which meet all the requirements of law and which appeal to the general reader and are read by all classes

and groups of citizens generally; and that the action of the majority of the board of county commissioners in proposing to enter into the contract above referred to was, in all respects, unauthorized and unlawful.

The court concluded that respondent was entitled to a permanent injunction restraining the commissioners from entering into the contemplated contract, and requiring them to vacate and rescind their award of this contract as made. A decree was entered in accordance with the findings of fact and conclusions of law.

It must be admitted that the views of newspaper editors and individuals concerning political, social, and economic questions are extremely divergent, and that such questions are strongly controversial. Few publications of any description in which such matters are discussed, are noncontroversial in character. Of course, the bias of some authors and editors is frankly stronger than others, and some newspapers devote more space to items which are strictly news of general interest than do others.

The trial court, over petitioners' objection, admitted the testimony of several newspapermen, some of them engaged in the teaching of journalism and some engaged in business as publishers of newspapers in King county. These witnesses very generally agreed in the opinion that the "Washington New-Dealer" is not a newspaper of general circulation, but is a "member house organ," or special interest paper, of interest only to the membership of the group sponsoring its publication and persons sharing their opinion.

Petitioners argue that this testimony was improperly admitted, as not expert testimony within the rules governing the admission of that class of evidence, and that the testimony of the witnesses amounted to no more than statements of their conclusions of law and was not confined to matters of fact.

■ This court has several times considered questions somewhat analogous to the basic question here presented, and these decisions will now be considered.

In the case of *Puget Sound Publishing Co. v. Times Printing Co.,* 33 Wash. 551, 74 Pac. 802, it appeared that the city council of the city of Seattle, having called for bids for the purpose of designating an official newspaper for the city, let the contract for the next year's official publications to The Times Printing Company, rejecting a lower bid submitted by Puget Sound Publishing Company, owner and publisher of "The Daily Bulletin." After the rejection of its bid, the Puget Sound Publishing Company filed its complaint before the superior court, demanding an injunction restraining the city and its council from proceeding to accept the bid of The Times Printing Company and requiring the acceptance of plaintiff's bid. The superior court entered a decree in plaintiff's favor, from which The Times Printing Company appealed. Before this court, appellant contended that "The Daily Bulletin" was not a newspaper of general circulation, and that the trial court had erred in holding to the contrary.

From the opinion of this court, it appears that "The Daily Bulletin" was a daily newspaper, consisting of four pages, thirteen by twenty inches in size, publishing items concerning the proceedings before the courts of Washington, state and Federal, publishing the proceedings of the board of public works for the city of Seattle, items concerning the transfer or encumbrance of real estate, sales of real estate by the sheriff, weather reports, Seattle bank clearances, theatrical news, news of interest to persons engaged in building, and the reports of the doings of the Seattle chamber of commerce. The paper also contained some general news of the day. The paper had a subscription list in the city of Seattle of between seven hundred fifty and one thousand per-

sons, and was read daily in the city of Seattle by about three times the number of its subscribers.

Appellant contended before this court that the paper in question was not a newspaper, and cited definitions of the word *newspaper* in the Century Dictionary, and from the American & English Encyclopedia of Law. This court cited the opinion of the supreme court of Wisconsin in the case of *Hall v. Milwaukee,* 115 Wis. 479, 91 N. W. 998, in which a somewhat similar publication was held a newspaper within the charter of the city of Milwaukee, and cited the opinion of the supreme court of Indiana in the case of *Lynn v. Allen,* 145 Ind. 584, 44 N. E. 646, 57 Am. St. 223, 33 L. R. A. 779, in which it was held that a publication primarily devoted to the general dissemination of legal news was a newspaper of general circulation. The quotation from the case last cited, included by this court in its opinion, is of interest. This court held that "The Daily Bulletin" was a newspaper of general circulation in the city of Seattle.

In the case of *Warner v. Miner,* 41 Wash. 98, 82 Pac. 1033, an appeal from an order denying the application to vacate a judgment rendered in a tax foreclosure suit, this court held that the publication of a summons in the "Index Miner" was sufficient to confer jurisdiction upon the trial court to enter the judgment appealed from. It was contended before this court that the publication referred to was not a newspaper, within the meaning of the statute. It was, of course, a weekly publication, and had a local circulation in and around the town of Index, in Snohomish county, to about four hundred paid subscribers. This court, following the case of *Puget Sound Publishing Co. v. Times Printing Co., supra,* held that the "Index Miner" was a newspaper of general circulation.

In the case of *Times Printing Co. v. Star Publishing*

*Co.*, 51 Wash. 667, 99 Pac. 1040, it appeared that the plaintiff sought from the superior court an injunction restraining the defendant city of Seattle from entering into a contract with the defendant Star Publishing Company, covering the city printing for the year 1909. The charter requirements concerning newspapers doing this printing were practically the same as in the case of *Puget Sound Publishing Co. v. Times Printing Co., supra.* The city council had accepted the bid of Star Publishing Company, which offered to carry the city printing in the "Noon Star," which the plaintiff contended was not a newspaper, within the charter requirements. The trial court found that this publication was no more than a preliminary or special edition of "The Seattle Star," an evening newspaper, and was not of itself a newspaper within the definition of the charter. From the opinion of this court, it appears that, at the time of filing its bid, the "Noon Star" had no regular subscription list, but that about one thousand copies were daily sold on the streets. This court, while holding that the paper was a newspaper, held that, at the time of the acceptance of the defendant's bid by the city council, the "Noon Star" was not a newspaper of general circulation, distinguishing on the facts the case decided from the first case hereinabove cited.

In the case of *Beutelspacher v. Spokane Savings Bank,* 164 Wash. 227, 2 P. (2d) 729, this court, citing two of the cases hereinabove referred to, held that the "Spokane Weekly Chronicle," having a total subscription list of approximately four hundred fifty, was a newspaper of general circulation in Spokane county, within the meaning of the statute providing for the publication of the notice of an intended dissolution of a savings association.

This court has several times held that a weekly

newspaper of comparatively small circulation, sometimes limited to a particular locality or to a particular class or classes of readers, is a newspaper entitled to publish legal notices of various sorts. It cannot be supposed that many persons depend for news of the day upon publications published no more frequently than once a week. The great metropolitan dailies printed in this and other states circulate with astonishing rapidity through every village and hamlet in the state of Washington. Weekly publications have their value and are carefully read by many persons, but they are seldom relied upon as conveyors of news concerning current events of general interest.

An official newspaper, designated as such by a municipal corporation, whether city, county or state, is available to anyone who desires to keep in touch with the official notices therein published, and anyone desiring to read the official bulletins may subscribe to the newspaper or read it at some library.

There is some conflict in the decisions as to newspapers authorized to publish legal and municipal notices. Some courts have held that newspapers such as "The Daily Bulletin," referred to in the case of *Puget Sound Publishing Co. v. Times Printing Co., supra,* are publications appealing to a limited class and not proper newspapers to carry official notices. We are convinced that the weight of authority is the other way and in accord with the prior decisions of this court.

The supreme court of Wisconsin, in the case of *Hall v. Milwaukee,* 115 Wis. 479, 91 N. W. 998, held that a daily publication having a circulation of less than one thousand, and being a law and business reporter, containing no more than a column of general news, was a newspaper. The court recognized that the publication was a law and business reporter, reaching but a few hundred out of the large population of the city

of Milwaukee. In the course of its opinion, the court said:

"The difference is only in degree between such papers and those which, of definite policy, confine themselves mainly to those events which are of special interest to a limited class, thus bringing that particular phase of the news more conveniently before the class so interested in it. When this field is once entered, the difficulty of drawing any scientific line is obvious, and we cannot believe that the legislature intended to pass over to the common council discretion to say that, because one paper did not publish fully certain complexions of political news, or of sectarian and religious news, or adequate description of sporting events, or otherwise limited its field of news, it should be excluded from the rank of competing newspapers. On the contrary, we are convinced that the charter provision in question can only be enforced by giving to the word under discussion therein the meaning which has been given to it by courts all over the country, and thus holding that the Daily Reporter is a newspaper within its terms."

In the case of *Lynn v. Allen*, 145 Ind. 584, 44 N. E. 646, 57 Am. St. 223, 33 L. R. A. 779, the supreme court of Indiana held that a publication known as the "Daily Reporter" was a newspaper of general circulation throughout the city of Indianapolis, although its circulation was small compared with the population of the county. Discussing this question, the court said:

"As a matter of fact, every newspaper is, in greater or less degree, devoted to some special interest. No one, however, would claim that because a newspaper should, for example, be the organ of a certain political party, and especially devoted to the interests of such party, it would not therefore be a newspaper of general circulation. Yet such a newspaper is, to a large extent, read only by the members of the political party whose doctrines are advocated and expounded in its columns."

The supreme court of Oklahoma, in the case of *Hesler v. Coldron,* 29 Okla. 216, 116 Pac. 787, quoted with approval from the case last cited the language hereinabove set forth, and held that a paper having a circulation list of only 215, and containing legal and real estate items, building permits, etc., was a newspaper of general circulation.

The supreme court of Minnesota, in the case of *Hull v. King,* 38 Minn. 349, 37 N. W. 792, held that the "Northwestern Presbyterian," a weekly publication containing principally religious news of interest to members of the Presbyterian church, was a newspaper within the purview of the Minnesota statute, competent to publish legal notices. In the course of its opinion, the court said:

"Most newspapers are devoted largely to special interests, political, religious, financial, moral, social, and the like, and each is naturally patronized mainly by those who are in accord with the views which it advocates, or who are most interested in the kind of intelligence to which it gives special prominence. But, if it gives the general current news of the day, it still comes within the definition of a newspaper."

The supreme court of Oregon, in the case of *United States Mortgage & Trust Co. v. Marquam,* 41 Ore. 391, 69 Pac. 37, 41, held that a weekly paper, sensational in tone, containing sporting news items of general interest, some advertisements and legal notices, was a newspaper within the legal acceptation of the term.

The supreme court of California, *In re Labor Journal,* 190 Cal. 500, 213 Pac. 498, in a proceeding instituted for the purpose of having a newspaper designated by law as a newspaper of general circulation, held that the "Labor Journal" was such a newspaper, although the court was of the opinion that the publication was

devoted primarily to the interests of labor unions and to the dissemination of union labor news, its circulation being principally among members of such unions. In the course of its opinion, the court said:

"But the fact that a newspaper is devoted to the interest of a particular class of persons, as, for instance, those engaged in the same business or calling, and specializes on news and intelligence primarily of interest to that class, will not exclude it from classification as a newspaper of general circulation, if, in addition to such special news, it also publishes news of a general character."

There is in force in the state of California a statute (§ 4460, Cal. Pol. Code) defining a newspaper of general circulation, which statute provides that a newspaper devoted to the interests, entertainment, or instruction of a particular class, profession, trade, calling, or denomination, is not a newspaper of general circulation, but the court was of the opinion that the newspaper in question fell without the prohibition of the law.

Other cases to the same effect are *Maass v. Hess,* 140 Ill. 576, 29 N. E. 887; *Hanscom v. Meyer,* 60 Neb. 68, 82 N. W. 114, 48 L. R. A. 409, 83 Am. St. 507; *Kerr v. Hitt,* 75 Ill. 51.

In 20 R. C. L. 201, title "Newspapers," is found an interesting discussion of questions pertinent to the issues before us. Section 2, p. 203, is a discussion of "Papers Devoted to Special Interests." It is observed that

"It is difficult, if not impossible, to determine with clearness and exactness where the lines of demarkation should be drawn between a newspaper, in a legal and common acceptation of the term, and the numerous publications devoted to some special purpose, and which circulate only among a certain class of the people, and which are not within the purview of stat-

utes requiring publication of legal notices in some newspaper."

The principle is stated that

". . . the fact that a publication may be devoted especially to some particular object, calling, or profession, or the dissemination of information of a special kind will not deprive it of its general classification as a newspaper if it also possesses the general characteristics of a newspaper as already defined. Most newspapers are devoted largely to special interests, political, religious, financial, moral, social, and the like; and each is naturally patronized mainly by those who are in accord with the views it advocates, or who are most interested in the kind of intelligence to which it gives special prominence."

In 68 A. L. R. 542, commences an extensive annotation upon the matter of what constitutes a newspaper of general circulation. The rule is laid down that

"It may be said generally that a newspaper is one of general circulation, even though it is devoted to the interests of a particular class of persons, and specializes on news and intelligence primarily of interest to that class, if, in addition to such special news, it also publishes news of a general character and of a general interest, and to some extent circulates among the general public."

Respondents cite several cases, including *State ex rel. Yeagar v. Rose,* 93 Fla. 1018, 114 So. 373, in which the sole question presented was whether or not the "Daily Record," published in the city of Miami, Florida, was a newspaper within the contemplation of the statute relating to constructive service of process. The newspaper in question was published daily, except Sundays and legal holidays. Its contents were devoted largely to matters of interest to the legal profession. Its subscription list was three hundred fifty or less, in a county with a population of over one hundred fifty thousand, the paper being devoted primarily to report-

ing the proceedings and transactions of the courts. The court was of the opinion that such a publication

". . . reporting little or no news in which the general public would be interested, would in our judgment, not be a newspaper in contemplation of our constructive service statute which must be construed in this connection with the due process clause of the State and Federal Constitutions."

The supreme court of Rhode Island, in the case of *Crowell v. Parker,* 22 R. I. 51, 46 Atl. 35, 84 Am. St. 815, held that a publication designated "Real-Estate Register and Rental Guide" was not a public newspaper, the same being largely devoted to the publication of transactions concerning real estate. The court noted that it did not appear that the newspaper in question had ever been employed as a medium for printing legal notices.

Respondents also cite two California cases in which the statute of that state above referred to was construed. In view of the prior decisions of this court and the California statute above referred to, these cases are not here important.

It appears from the evidence that the "Washington New-Dealer" has a circulation of something over five thousand in King county, two-thirds of which is in the city of Seattle. It circulates another five thousand copies throughout other counties in the state, most, if not all, of this being paid circulation. Out of 649 mail subscribers in King county, the evidence shows that over one hundred fifty different occupations were represented. It also appears that over forty different classes of business had been advertised in the paper during the six months preceding the trial, and that, during the three years preceding the trial, a dozen or so attorneys had used the paper for the publication of legal notices. The paper also has been used for the

publication of some notices from the sheriff's office, and a few notices from departments of the state government have been published. It appears from copies of the "Washington New-Dealer," which were introduced in evidence, that, while the paper is frankly partisan, it contains much matter which is properly classified as news and of general interest.

We are convinced that, under the authorities, it must be held that the publication of the Washington Commonwealth Federation is a newspaper which the county commissioners, pursuant to Rem. Rev. Stat., § 4080 [P. C. § 1844], *supra,* were authorized to designate as that publication which should carry the official advertising and publications of King county. It is evident that the legislature had in mind the savings which would result to the counties from the selection of newspapers other than the newspapers of largest circulation, which undoubtedly charge more for their space than the smaller newspapers.

The testimony introduced by the plaintiff in the court below, consisting of the opinions of well qualified and experienced newspapermen, all of whom agreed in the opinion that the "Washington New-Dealer" is not a newspaper of general circulation, is of little materiality in connection with the question here to be determined. The publication is a newspaper within the purview of the statute above quoted. The opinions of the different witnesses, to the effect that the publication is a means of expressing the views of a particular group, or a propaganda organ, are beside the point, and have little bearing upon the question to be here decided.

Respondents argue that, under its charter, the Washington Commonwealth Federation, being a nonprofit corporation, has no authority to publish a news-

paper as a commercial proposition. One of the enumerated powers, as disclosed by the articles of incorporation, is "to publish and distribute bulletins, pamphlets, newspapers and periodicals." Respondents cite many authorities in support of their argument on this phase of the case, but we are of the opinion that these authorities are not here in point. The corporation has power under its charter to publish a newspaper. If any of its officers violate the charter, an appropriate remedy exists. We find no ground for holding, at the instance of a taxpayer, that the proposed contract with King county is *ultra vires* the corporate powers.

In view of the fact that, in letting such a contract as that here in question, the board of county commissioners is acting only as an administrative body, with the discretionary powers vested in them as such (*State ex rel. Republic Publishing Co. v. McPhee, supra*), and in view of the evidence and the authorities hereinabove referred to, we hold that the trial court erred in entering the decree appealed from, and the decree is accordingly reversed with instructions to the trial court to dismiss the proceeding.

BLAKE, C. J., MAIN, SIMPSON, and JEFFERS, JJ., concur.