[No. 38754-5-I.    Division One.    May 12, 1997.]

DAILY JOURNAL OF COMMERCE, INC., *Respondent*, v.
DAILY JOURNAL CORPORATION, *Appellant.*

*Michael B. King, Michael D. Dwyer,* and *Lane Powell Spears Lubersky,* for appellant.

*James L. Phillips* and *Miller, Nash, Wiener, Hager & Carlsen;* and *Alan Wicks* and *Preston Gates & Ellis,* for respondent.

*Marshall J. Nelson* on behalf of Allied Daily Newspapers, amicus curiae.

WEBSTER, J. — In 1961, the Legislature added a new qualification for newspapers that wanted to publish legal announcements: newspapers must contain "news of general interest as contrasted with news of interest primarily to an organization, group or class."[1] This qualification requires a publication to dedicate itself to topics in such a way as to ensnare a broad based readership. Because the Legislature intended to disqualify special interest newspa-

---

[1] RCW 65.16.020.

pers, the Washington Journal, which emphasizes news of particular interest to lawyers, does not qualify as a legal newspaper. Consequently, we affirm the trial court's order revoking approval of the Washington Journal as such.

## FACTS

The Washington Journal obtained an ex parte superior court order in 1995 stating that it qualified as a "legal newspaper."[2] A few months later, the Daily Journal of Commerce filed a petition in superior court seeking to terminate Washington Journal's legal newspaper status. The crux of the Daily Journal's attack was that the Washington Journal failed to qualify because it did not "contain news of general interest as contrasted with news of interest primarily to an organization, group or class."[3] In a memorandum opinion, the superior court terminated Washington Journal's status as a legal newspaper. The court held that while some of the news published in the Washington Journal is of general interest, as well as particular interest to the legal community, "the contents are approximately 90 percent primarily directed to the legal community."[4] Washington Journal appeals the superior court's termination of its status as a legal newspaper.

## DISCUSSION

### Qualifications of a Legal Newspaper

■ This case requires us to interpret the statute establishing qualifications of a legal newspaper.[5] Given the breadth of statutes requiring use of legal newspapers, these publications impact diverse segments of society. For example, notice in a legal newspaper is required for certain procedures in real property foreclosures or sales

---

[2] RCW 65.16.020.

[3] RCW 65.16.020.

[4] CP 466.

[5] RCW 65.16.020.

under execution of judgment,[6] probate of estates,[7] dependency and termination of parental rights,[8] separation contracts made without court decree,[9] adoption,[10] proposed constitutional amendments and special elections,[11] public works contracts,[12] and sale or lease of public property or property held in trust.[13] The variety of people and businesses affected by these statutes indicates that the Legislature intended legal newspapers to broadcast toward diverse segments of society.

Keeping the intended audience in mind, we turn to interpreting the legal newspaper qualification statute. To put the current statute in perspective, we initially examine its predecessors. The Legislature first regulated the publication of legal notices in 1921.[14] That legislation essentially defined "legal newspaper" as a daily or weekly English language newspaper in the city or town for the notice published.[15] Despite the absence of any statutory language,[16] the courts before and after the statute consistently analyzed whether the disputed publication was a "newspaper of general circulation."[17]

---

[6]RCW 61.24.040(3), 6.21.030(2)(b).

[7]RCW 11.40.150, 11.56.060, 11.56.080, 11.95.030.

[8]RCW 13.34.080.

[9]RCW 26.09.070(2).

[10]RCW 26.33.310(3).

[11]WASH. CONST. art 23, § 1, RCW 29.27.072, 29.68.100.

[12]RCW 36.32.235(4), 39.04.020, 39.10.050(4).

[13]RCW 47.12.283(2), 47.76.320(2), 36.34.020, 36.34.160, 28A.335.120(2), 70.44.300(3), 11.56.060, 11.56.080.

[14]LAWS OF 1921, Ch. 99.

[15]LAWS OF 1921, Ch. 99, § 1, *see also, Bellingham v. Bellingham Publ'g Co.*, 116 Wash. 65, 198 P. 369 (1921) (construing some parts of the 1921 statute).

[16]To be accurate, it must be conceded that some ordinances included the phase "newspaper of general circulation." See, e.g., *Puget Sound Publ'g Co. v. Times Printing Co.*, 33 Wash. 551, 553, 74 P. 802 (1903).

[17]*See, e.g., Warner v. Miner*, 41 Wash. 98, 102, 82 P. 1033 (1905); *Beutelspacher v. Spokane Sav. Bank*, 164 Wash. 227, 234, 2 P.2d 729 (1931).

In 1941, the Legislature established the procedure by which superior courts approve publications as "legal newspapers."[18] That statute established the following qualifications for approval:

> The qualifications of a legal newspaper are that such newspaper shall have been published regularly, at least once a week, in the English language, as a newspaper of general circulation, in the city or town where the same is published at the time of application for approval, for at least six months prior to the date of such application, and shall be printed either in whole or in part in an office maintained at the place of publication.[19]

The current statute includes a 1961 amendment to those qualifications; the Legislature added the requirement that papers "shall contain news of general interest as contrasted with news of interest primarily to an organization, group or class."

> The qualifications of a legal newspaper are that such newspaper shall have been published regularly, at least once a week, in the English language, as a newspaper of general circulation, in the city or town where the same is published at the time of application for approval, for at least six months prior to the date of such application; shall be compiled either in whole or in part in an office maintained at the place of publication; shall contain news of general interest as contrasted with news of interest primarily to an organization, group or class; and shall hold a second class mailing permit.[20]

When the Legislature amended the statute in 1961, it also grandfathered newspapers that had already been approved: "Provided, That this section shall not disqualify as a legal newspaper any publication which, prior to June 8, 1961, was adjudged a legal newspaper, so long as it

---

[18]Laws of 1941, ch. 213, §§ 1-2.

[19]Laws of 1941, ch. 213, § 3; see also Laws of 1921, ch. 99, § 1.

[20]Laws of 1961, ch. 279, § 1 (codified at RCW 65.16.020).

continues to meet the requirements under which it qualified."[21]

Under the statute's plain language, which added an additional requirement, a newspaper containing news of interest primarily to an organization, group or class is not a legal newspaper.[22] By amending the earlier statute, the Legislature demonstrated its intent to change legal rights.[23] It further demonstrated its intent to change the existing standard by grandfathering existing "legal newspapers."[24]

The added requirement, that the paper "shall contain news of general interest as contrasted with news of interest primarily to an organization, group or class,"[25] closely comports with the policies underlying legal publications. Such newspapers should appeal to broad segments of the populace whose interests will be affected if they fail to respond to legal announcements. The statute's "news of general interest" requirement exudes a legislative intent to exclude special interest newspapers, that is, those with a narrow appeal. The Legislature intended that legal newspapers would be ones containing news that appeals to a general, as opposed to a special, readership. This requirement, which addresses breadth of the publication's subject matter, is distinct from the general circulation requirement, the latter addressing a publication's market penetration.[26]

■ The superior court correctly found that the Washington Journal had "an overwhelming emphasis on news and articles of particular interest to lawyers."[27] The Washington Journal contains only a few articles that address

---

[21]RCW 65.16.020.

[22]RCW 65.16.020.

[23]*State v. McKinley*, 84 Wn. App. 677, 929 P.2d 1145, 1149 (1997).

[24]*Cf.*, *Woodson v. State*, 95 Wn.2d 257, 264, 623 P.2d 683 (1980).

[25]RCW 65.16.020.

[26]*Times Printing Co. v. The Star Publ'g Co.*, 51 Wash. 667, 671, 99 P. 1040 (1909); *Warner v. Miner*, 41 Wash. at 102.

[27]CP 466.

something completely unrelated to the law. The vast majority are closely related to legal issues, proceedings, and subjects. Its news is predominantly special interest news, and it does not contain news of general interest, as opposed to news primarily of interest to a class. As a result, the trial court was also correct in concluding that the Washington Journal does not qualify as a legal newspaper under Washington's legal publications chapter.

The Washington Journal relies heavily on *King County v. Superior Court For King County*,[28] a 1939 case. It concerned the "Washington New Dealer," published by the Washington Commonwealth Federation.[29] The superior court in that case decided that the New Dealer published news of interest only to Commonwealth Federation members and those who share their philosophy.[30] Yet the supreme court held, under the former statute, that even a paper devoted to a special interest is a "legal newspaper" so long as it publishes some news of a general character.[31] By that, the court meant that the Washington New Dealer was a paper of general circulation. In so holding, the court mentioned several papers devoted to specific organizations, groups, or classes that were legal newspapers under the laws of their respective states:

- a Minnesota paper "containing principally religious news of interest to members of the Presbyterian church";[32]
- a California paper "devoted primarily to the interests of labor unions and to the dissemination of union labor news;" and[33]
- a Milwaukee legal and business reporter "reaching

---

[28]199 Wash. 591, 92 P.2d 694 (1939).

[29]199 Wash. at 592.

[30]199 Wash. at 598.

[31]199 Wash. at 605, 606, 607.

[32]199 Wash. at 605.

[33]199 Wash. at 605-06.

but a few hundred out of the large population of the city of Milwaukee."[34]

And when classifying publications, the *King County* court and the authorities that it cites particularly utilized the word "class" in characterizing these special interest audiences.[35] The 1961 amendment to Washington's statute, excluding papers with "news of interest primarily to an organization, group or class,"[36] seems directly aimed at the newspapers of the sort approved in *King County*, including the Washington Commonwealth Federation's "frankly partisan"[37] Washington New Dealer. For this reason, we disagree with the Washington Journal's argument that the Legislature amended the qualification statute in 1961 to codify the supreme court's *King County* ruling. If so, why would the Legislature have grandfathered existing legal newspapers?

■ We recognize that the Washington Journal is not devoid of general news. For example, articles in its "The State in Brief" column included the following local and state stories unrelated to the law:

- King County's approval of a Boeing Field lease; students who were honored for wheelchair design; federal funds for road repairs; and Governor Lowry's unticketed speeding infractions.[38]

- A drill team's fame because of a silly sack routine,

---

[34]199 Wash. at 603-04.

[35]199 Wash. at 603 ("sometimes limited to a particular locality or to a particular class or classes of readers"); at 603 ("publications appealing to a limited class"); at 604 ("events which are of special interest to a limited class"); at 606 ("devoted to the interest of a particular class of persons, as, for instance those engaged in the same business or calling"); at 606 ("devoted to the interests, entertainment, or instruction of a particular class, profession, trade, calling, or denomination"); at 606 ("which circulated only among a certain class of the people"); and at 607 ("devoted to the interests of a particular class of persons").

[36]LAWS OF 1961, ch. 279, § 1; RCW 65.16.020.

[37]199 Wash. at 609.

[38]CP 70 (March 16, 1995 issue).

and Olympic National Park officials recommending killing mountain goats.[39]

Still, we note that even "The State in Brief" column does not appear in the Washington Journal's March 30, 1995 issue. And we reject Washington Journal's argument that dual purpose articles (articles on legal subjects that are also of interest to the general public) can satisfy the news of general interest qualification. First, that argument begs the question. After all, many interested observers of society will find a myriad of specialty subjects (such as health, real estate, travel, music, theater, art, history, sports, food, and wine) of interest. That does not mean that a magazine focusing on art, food, or wine, is a publication with news of general interest. By amending the statute to require news of general interest, the Legislature meant to require news that appeals to a wide audience because of its generality. Second, Washington Journal's interpretation puts emphasis only on the word "contain," ignoring its relation to other words in the phrase. In context, the phase "shall contain news of general interest as contrasted with news of interest primarily to an organization, group or class," requires the publication to dedicate itself to topics in such a way as to ensnare a broad based readership.

In conclusion, we hold that the Washington Journal is not a legal newspaper. It does not contain news of general interest as contrasted with news of interest primarily to an organization, group or class.

## The First Amendment

A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech.[40] In *Arkansas Writ-*

---

[39]CP 130 (March 23, 1995 issue).

[40]*Leathers v. Medlock*, 499 U.S. 439, 447, 111 S. Ct. 1438, 1443-1444, 113 L. Ed. 2d 494 (1991).

*ers' Project, Inc. v. Ragland*,[41] the United States Supreme Court struck down a tax that differentiated between religious, professional, trade, and sports periodicals on the one hand, and all others on the other.[42] The problem with the burden imposed by the tax was that it singled out a small group within the press.[43] In this regard, the Supreme Court held that "official scrutiny of the content of publications as the basis for imposing a tax is entirely incompatible with the First Amendment's guarantee of freedom of the press."[44]

Similarly, the qualifications statute requires the court to examine the content of a newspaper and determine if it contains "news of general interest" or "news of interest primarily to an organization, group or class."[45] This appears identical to the content regulated by the Arkansas tax exemption.

█ The burden, however, is very different. Here, the only alleged "burden" is the inability to compete for one limited type of advertising revenue. This distinguishes *Arkansas Writers' Project*. The ability to compete for a particular type of revenue is unlike the imposition of tax on the exercise of a privilege guaranteed by the Bill of Rights. And it is unlike *Adams v. Hinkle*,[46] in which the court struck down a licensing fee on comic books from which newspapers were exempt. Consequently, we hold that the statute does not burden freedom of the press.

█ Similarly, because laws must have a beginning date, thus discriminating between the rights of an earlier and

[41]481 U.S. 221, 230, 107 S. Ct. 1722, 1728, 95 L. Ed. 2d 209 (1987).

[42]107 S. Ct. 1722, 1726.

[43]107 S. Ct. at 1727.

[44]107 S. Ct. 1728.

[45]RCW 65.16.020.

[46]51 Wn.2d 763, 783-84, 322 P.2d 844 (1958).

334

later time, the statute does not violate the equal protection clause.[47]

## Conclusion

Fairness requires notice: "[t]he fundamental requisite of due process of law is the opportunity to be heard."[48] And if published notices are to be meaningful, the publications in which they appear must, by design, appeal to a general readership. When the legislature amended the qualifications for legal newspapers, it intended to make published notification more meaningful by allowing such notices to be published only in publications appealing to a broad swath of the populace. Because the Washington Journal is a special interest publication appealing to lawyers, it falls short of meeting the flexible "news of general interest" standard.

We affirm the superior court's revocation of the Washington Journal's status as a legal newspaper.

KENNEDY, A.C.J., and COLEMAN, J., concur.

Review denied at 134 Wn.2d 1016 (1998).

---

[47]*In re Norwalk Call*, 62 Cal. 2d 185, 397 P.2d 426, 41 Cal. Rptr. 666 (1964).

[48]*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).