No. 14751

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

MARY E. CAMERON, individually and
MARY E. CAMERON AS PERSONAL REPRESENTATIVE
in intestacy of the estate of Archie H.
Camerson, deceased,

                Plaintiffs and Appellants,

    vs.

FIRST NATIONAL BANK IN BOZEMAN, a
national banking association, and UNIVERSAL
UNDERWRITERS LIFE INSURANCE COMPANY, a
Stock Company,

                Defendants and Respondents.

---

Appeal from: District Court of the Eighteenth Judicial District,
           Hon. W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Landoe, Brown, Planalp, Kommers & Lineberger,
         Bozeman, Montana
        Gene I. Brown argued, Bozeman, Montana

    For Respondents:

        Anderson, Symmes, Brown, Gerbase, Cebull & Jones,
         Billings, Montana
        Rockwood Brown argued, Billings, Montana
        Drysdale, McLean, Screnar & Cok, Bozeman, Montana
        James J. Screnar argued, Bozeman, Montana

---

                Submitted: November 2, 1979

                Decided: MAR 1980

Filed: MAR

_Thomas J. Kearney_
                   Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a summary judgment granted by the District Court of the Eighteenth Judicial District, Gallatin County, in favor of the defendants-respondents. Plaintiff-appellant Mary E. Cameron, as personal representative of her father's estate, brought an action to quiet title to a mobile home that was being purchased by her father from Premier Homes, Inc., under a retail installment sales contract at the time of his death. By this action she also sought to have defendants pay the remaining balance of the purchase price on the mobile home for their failure to provide her father, Archie Cameron, with a policy of credit life insurance. Summary judgment was granted in favor of respondents after both sides had answered interrogatories and after respondents had filed affidavits in support of their motion for summary judgment. The judgment was granted on the grounds that there never was a contract of insurance.

Mary Cameron is the daughter of Archie Cameron and is the personal representative of his estate. Cameron died on January 20, 1978. One of the assets of his estate was a 1972 Columbia mobile home which Cameron purchased from respondent Premier Homes, Inc., on August 10, 1976. On that date Cameron signed a retail installment contract with Premier to purchase the mobile home. Boid Lehman, Premier's salesman, handled the transaction. The retail installment contract contained the following provision regarding credit life insurance:

> "CREDIT LIFE AND DISABILITY INSURANCE is not
> required by Seller in connection with this
> transaction. Buyer as of the date hereof, is
> able to perform usual activities or occupation,

and otherwise qualifies for such insurance.
This insurance may be obtained through Seller
for the term of this contract at the cost
indicated below:

> ( ) Credit Life Insurance $ 307.50
> ( ) Credit Life and disability
>        Insurance            $_____

"I desire credit ( ) life and ( ) disability
insurance.  I AM UNDER 66 YEARS OF AGE.

"Date 8-10-76___  x /s/ Archie H. Cameron___
                      Signature of Insured
                      Buyer

"THIS IS NOT A COMMITMENT TO PROVIDE CREDIT
LIFE OR CREDIT LIFE AND DISABILITY INSURANCE."

The total deferred contract price included the $307.50 premium for credit life insurance.  The retail installment contract was assigned to respondent First National Bank of Bozeman the same day.  The insurance policy was to be with respondent Universal Underwriters Life Insurance Company. Premier Homes, as part of its business selling mobile homes, had an agreement with Universal Underwriters Life Insurance Co. whereby Premier Homes acted as Universal's agent for the purpose of selling credit life insurance.

Cameron did not receive an application for credit life insurance until September 14, 1976, when he completed and signed an application prepared for him by Boid Lehman. On the application Cameron indicated that he had high blood pressure and was under treatment, that he had been treated for arthritis, that he was not working at the time, and that he was drawing disability from the Three Forks Portland Cement Co.  This application was forwarded to the main office of Premier Homes, where Helen Martin, an employee of Premier, determined that Cameron was ineligible for credit life coverage under rules dictated to Premier by respondent Universal Underwriters Life Insurance Co.

-3-

In his affidavit, which the District Court accepted as being true, Boid Lehman, the salesman who sold the mobile home to Cameron, stated that six days later, on September 20, 1976, at the request of the manager of Premier's home office, he drove to Cameron's home in Three Forks and personally notified Cameron that he was not qualified for credit life insurance and that he did not have any coverage. This "request" was corroborated by the affidavit of Helen Martin, a fellow employee of Premier Homes. Cameron never received written notice that his application for credit life insurance with Universal Underwriters Life Insurance Co. had been rejected. No policy was ever issued to Cameron. His application was never forwarded by Premier to Universal, since Premier's employee Helen Martin determined that it should be summarily denied. The District Court found that Universal never had notice that an application had been made and that it was unaware that Archie Cameron ever existed or that credit life coverage was being claimed until a demand for payment on the policy was made by the attorney for the Cameron estate in a letter addressed to Premier on March 23, 1978. This demand was refused.

Although Cameron's application for credit life insurance was rejected on September 20, 1976, the $307.50 premium for insurance which had been included in the contract price was not refunded or credited to his account until March 1978, after Cameron's death and after the attorney for his estate had demanded payment on the policy. At that time a refund and credit of the $307.50 premium plus interest was made.

Two principal issues are presented to this Court on appeal:

1. Whether or not defendants-respondents were entitled to summary judgment as a matter of law if they failed to follow the provisions of section 33-21-204(2), MCA, and section 33-21-206(3), MCA?

2. Whether or not there remained any genuine issues of material fact making summary judgment improper in this case?

Mary Cameron argues that summary judgment was improperly granted to respondents in this case because there remained genuine issues of material fact and because respondents were not entitled to summary judgment as a matter of law. Rule 56(c), M.R.Civ.P. The reason respondents were not entitled to judgment as a matter of law is that they failed to comply with the requirements of Montana's statutes regulating credit life insurance. Specifically, respondents failed to deliver an application for credit life insurance to Cameron at the time the indebtedness was incurred, August 10, 1976, and they failed to either accept or reject his application within thirty days of that date, contrary to the provisions of section 33-21-204(2), MCA; although respondents "required" Cameron to make a payment of $307.50 in connection with credit life insurance, a policy was never issued; although respondents allegedly gave oral notice in person, they failed to give him immediate written notice of that fact as required by the statute, section 33-21-206(3), MCA; and, respondents failed to make an appropriate credit to his account promptly, not doing so until contacted by the attorney for Cameron's estate in March 1978. Each of these actions or lack of action was contrary to the provisions of section 33-21-206(3), MCA. Respondent

First National Bank in Bozeman is liable under these provisions as a "creditor" under section 33-21-103(3), MCA.

Furthermore, respondents as the moving parties failed to meet their burden to establish the absence of any genuine issues of material fact and consequently are not entitled to summary judgment.

Respondents contend that the summary judgment was proper as a matter of law. There never was a contract for insurance, as Cameron's application for credit life insurance was promptly rejected by respondents and personal notice of this rejection was given by Premier's employee, Boid Lehman on September 20, 1976. The payment of an insurance premium by Cameron as part of the total deferred price of the mobile home did not create a contract of insurance. No policy was ever issued, and respondent Universal Underwriters never knew of Cameron's application, as it had been summarily denied by Premier. Therefore, summary judgment was proper. Section 33-21-206(3), MCA, only applies where the creditor "requires" the debtor to carry credit life insurance. Since the retail installment contract provided that insurance was not required, this section is also inapplicable to the present case. (Even if this Court accepts appellant's argument that section 33-21-206(3), MCA, applies where the debtor is required to make a payment in connection with credit life insurance, appellant waived the advantage of the written notice requirement, which is intended solely for his benefit.)

As a preliminary matter, it must be determined whether First National Bank of Bozeman ("Bank") and Universal Underwriters Life Insurance Company ("Insurance Company"), as well as Premier Homes, Inc. ("Premier") are proper

parties to this action. Respondent Bank is potentially liable for the obligations of a "creditor" under section 33-21-206(3), MCA, because it comes within the definition in section 33-21-103(3), MCA:

> "'Creditor' means the lender of money or vendor or lessor of goods, services, property, rights, or privileges, for which payment is arranged through a credit transaction or any successor to the right, title, or interest of such a lender, vendor, or lessor." (Emphasis added.)

Since the Bank took an assignment of the retail installment contract, it must comply with the requirements of section 33-21-206(3), MCA, as Premier's successor in interest. Respondent Insurance Company is not liable in any event because, even though Premier may have acted as its agent in passing upon Cameron's application for credit life insurance, the requirements of section 33-21-206(3), MCA, are directed at a creditor and not at an insurer.

Appellant Mary Cameron contends that summary judgment was improperly granted to respondents in this case because there remained genuine issues of material fact and because respondents were not entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P., provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The first issue in this appeal is whether or not respondents were entitled to judgment as a matter of law. Appellant urges that respondents were not entitled to summary judgment because they failed to comply with the requirements of sections 33-21-204(2) and 33-21-206(3), MCA,

-7-

which are part of Montana's model act for the regulation of credit life insurance and credit disability insurance.

Section 33-21-204, MCA, provides in relevant part:

"(1) All credit life insurance and credit disability insurance sold shall be evidenced by an individual policy or in the case of group insurance by a certificate of insurance, which individual policy or group certificate of insurance shall be delivered to the debtor at the time the indebtedness is incurred except as hereinafter provided.

"(2) If the individual policy or group certificate of insurance is not delivered to the debtor at the time the indebtedness is incurred, a copy of the application for such policy or a notice of proposed insurance, signed by the debtor and setting forth the name and home office address of the insurer, the name or names of the debtor, the amount of payment by the debtor separately in connection with credit life insurance and credit disability insurance coverage, and a brief description of the coverage provided or to be provided, shall be delivered to the debtor at the time such indebtedness is incurred. The copy of the application for or notice of proposed insurance shall refer exclusively to insurance coverage and shall be separate and apart from the loan, sale, or other credit statement of account, instrument, or agreement unless the information required by this section is prominently set forth therein. Upon approval of the application, if any, or acceptance of the insurance and within 30 days of the date upon which the indebtedness is incurred, the insurer shall cause the individual policy or group certificate of insurance to be delivered to the debtor. The application or notice of proposed insurance shall state that, upon acceptance by the insurer, the insurance shall become effective as of the date the indebtedness is incurred." (Emphasis added.)

Subsection (2) applies only when the credit life insurance is not evidenced by a policy delivered to the debtor at the time the indebtedness is incurred.

Appellant contends that since respondents failed to deliver a copy of the application for credit life insurance to Cameron on August 10, 1976, when the indebtedness on the mobile home was incurred, and did not provide him with an application until September 14, 1976, they have violated

-8-

the provisions of this subsection. Furthermore, appellant argues that the third sentence of section 33-21-204(2), MCA, means that respondents were required to act on the application by either accepting or rejecting it within 30 days from the date the indebtedness was incurred. Since the installment sales contract was signed on August 10, 1976, and Cameron did not receive an application until September 14, 1976, it allegedly was not acted upon within the time provided by statute.

Contrary to appellant's contentions, it is clear that section 33-21-204, MCA, speaks only to the situation where a contract for credit life insurance has been entered, and the section is not applicable in this case where there was no contract and where no policy was ever issued.

Archie Cameron's application for credit life insurance was denied, and no policy was issued. Mere payment of the premium does not create a contract of insurance. 43 Am.Jur.2d Insurance §§ 195, 208, 210. Furthermore, the insurer's delay in accepting or rejecting an application does not create a contract of insurance. In Weaver v. West Coast Life Insurance Co. (1935), 99 Mont. 296, 304, 42 P.2d 729, 733, this Court observed:

> "It is a well-settled rule, established by the great weight of authority, that mere delay in passing upon an application for insurance cannot be construed as an acceptance thereof by the insurer so as to support an action ex contractu."

It is appparent that there was no contract of insurance in the case before this Court. A reading of the statute demonstrates that it is intended to apply only in the situation where a policy of insurance is ultimately issued by the insurer. Another statute, section 33-21-206(3),

-9-

MCA, deals specifically with the situation involved in this case, where no policy of insurance was ever issued. Finally, the language of section 33-21-204(2), MCA, demonstrates that it is applicable only "[u]pon approval of the application, if any, or acceptance of the insurance . . ."

The second statute which appellant claims was violated, so as to make summary judgment improper, is section 33-21-206(3), MCA, which provides:

> "(3) If a creditor requires a debtor to make a payment in connection with credit life insurance or credit disability insurance and an individual policy or group certificate of insurance is not issued, the creditor shall immediately give written notice to such debtor and shall promptly make an appropriate credit to the account." (Emphasis added.)

Respondents contend that by its own terms, this provision is inapplicable because the retail installment contract expressly provided that "CREDIT LIFE AND DISABILITY INSURANCE is not required by Seller in connection with this transaction." Such an interpretation misreads the statute, which applies "[i]f a creditor requires a debtor to make a payment in connection with credit life insurance . . ." The critical words are "requires . . . payment," not "requires . . . insurance." Thus, even though credit life insurance was not required, if the purchaser selected to insure, payment of the premium allegedly was required. It is not disputed that payment of the $307.50 premium was made at the time the contract was signed and that that amount was included in the total contract price to cover credit life insurance.

What this all boils down to is a question of fact which was neither addressed nor resolved by the trial court—namely, was a payment required? If a payment was required, the statute applies; if no payment was required,

the statute does not apply. Respondents do little more
that argue that the statute does "require" insurance, not
payment, to become effective, and we have rejected that
argument.

A determination on this point is necessary for the
resolution of this matter and, as such, is a genuine issue
of material fact. If payment was required, respondents
could not be entitled to a judgment as a matter of law be-
cause of their failure to comply with section 33-21-206(3),
MCA.

It does not appear that the required standards were
seriously applied here. We have an affidavit by the sales-
man, not a disinterested party, that he gave personal notice
to a man now deceased who cannot answer. His co-worker, who
cancelled the application for insurance, gave affidavit that
the salesman was asked to notify Cameron, not that he did
so. Thereafter, the affiants attempted to obtain insurance
for Cameron; no attempt was made to refund the premium
paid by Cameron. The most logical inference that flows
from these facts does not favor respondents. If the in-
ferences are correctly drawn against movant, there seems
little doubt the present result could stand.

We have the same situation in regard to the payment
of the insurance premium in the first place. If all in-
ferences are drawn against movant, the answer would be that
Cameron was required to make the initial payment if he
wanted the insurance.

In a case of this kind when available evidence is
flimsy at best and most of it subject to dispute only by a
deceased person, equity and fairness demand more evidence
than produced here before summary disposal. At the very

least, a procedure should be followed which would in some manner test the credibility of the two witnesses against the word of a deceased person. Some effort should be made to determine if the deceased was required to make the premium payment when he did, therefore placing him under the protection of section 33-21-206(3), MCA.

The summary judgment of the District Court is vacated as improperly issued and the cause remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

-12-

Mr. Justice John C. Sheehy specially concurring:

I agree that the summary judgment against Cameron must be vacated, and the matter remanded to the District Court for further proceedings, but on different grounds than set forth in the majority opinion.

The District Court, in its memorandum attached to its order granting summary judgment, placed weight on the fact that in the application for credit to Premier Homes, Inc., there was contained the statement "THIS IS NOT A COMMITMENT TO PROVIDE CREDIT LIFE OR CREDIT LIFE AND DISABILITY IN-SURANCE."

It should be understood that the quoted statement, contained in the application for credit, has no bearing whatever insofar as the insurer, Universal Underwriters Life Insurance Company is concerned. The application for credit is not designed to be an application for insurance. It is designed to go to Premier Homes, Inc., the creditor, and eventually to its assignee, First National Bank of Bozeman. The application for credit has no part in the decision of Universal Underwriters as to whether it will issue credit life or disability insurance on this particular risk.

The reason the language appears on the credit application form is an outgrowth of the federal Truth in Lending Act. Pub. L. 90-321, Title I, §106(b), 82 Stat. 148; 15 U.S.C. 1605(b). Because that language appears in the application for credit, the creditor, Premier Homes, Inc., is not required to include the cost of insurance in computing the finance charge percentage which the creditor must disclose to the borrower under the federal Truth in Lending Act. When this purpose of the language on the application for credit form is understood, one sees that it has no bearing on whether Cameron is entitled to insurance.

-13-

Because the credit application form itself is not an application for insurance, it was necessary, as the facts in this case show, for an agent of Premier Homes, Inc. to return to Cameron on September 14, 1976, to obtain a true application for insurance. It is this form which Cameron filled out, and truthfully indicated the fact that he was retired because of disability, and suffered from arthritis and other ailments.

There is a second element in the memorandum opinion of the District Court which must at this point be explained away. The District Court held that because Premier itself refused the credit life application, "no notice or instruments were ever given to Universal Underwriters Life Insurance Company about the application, and likewise no policy was issued therefore. Universal Life Insurance Company was unaware that Archie Cameron ever existed, and had no knowledge whatsoever of claimed credit life coverage for this person."

That finding of the District Court disregards the fact that Premier Homes, Inc. was an agent of Universal Underwriters Life Insurance Company. Universal is bound by the acts of its agent, and by the agent's knowledge. In fact, all knowledge of the agent relating to matters within the agent's authority is imputed to the insurance company. Section 28-10-604, MCA.

In this case Universal's agent collected the insurance premium, took the written insurance application, determined itself that the application did not fit the insurer's underwriting rules, and the agent on its own turned down the insurance for Cameron. But at that point, under the statute then in existence, it was the duty of the insurance company, through its agent or otherwise, to "immediately give written

-14-

notice to such debtor" and to "promptly make an appropriate credit to the account." Section 33-21-206(3), MCA.

The reason that those strict provisions of insurance law apply to credit life and disability business is because of the nature of this business in our present commercial world. In the credit life business insurers do not compete with each other to get insureds, but rather they compete with each other to get agents such as Premier Homes, Inc. Because the creditor, the lender, is also the agent of the insurance company writing credit life, the insurance company has entree to business it would not otherwise have. For this reason, insurance companies allow to such creditors as agents a substantial portion of the credit life premium for writing the business. This is one of the factors that cause premiums for credit life and disability to be quite high in relation to the risk assumed. That the procedure is successful is attested to by the fact that there is a high "penetration" of credit life and disability insurance in installment credit risks; some report as high as 90 to 95 percent.

The National Association of Insurance Commissioners was aware of this when it proposed the model law that Montana has adopted as its credit life and disability insurance provisions. Section 33-21-101, et seq., MCA.

Because of the prospective peril for borrowers-insureds in credit transactions, the model code incorporates strict provisions with respect to denial of coverage, and provides for immediate notice to the borrower, as well as return of his premium through a reduction of his debt account.

If we ignore the plain mandates of these statutes relating to insurance, we negate the intention of the legislature

-15-

in these matters, and substitute our own rules of insurance law instead of what the legislature established. The insurer, through its agent, did not follow the law in turning down the insurance coverage in this case. It kept for one and a half years the premium which it should have returned immediately. "Oversight" or "inadvertence" is not a legal excuse for thus ignoring the lawful duty imposed upon the insurer. The only lawful way that we can give effect to the intention of the legislature in these matters is to hold here that the insurance company, having failed in its lawful duty to give prompt written notice that the borrower was not insured, and failing to give prompt return of the paid premium, is estopped to claim now, after the death of the insured, that he is not covered by the insurer.

We cannot condone the failures of the insurer when there are but three or four pages of statutes relating to credit life and disability insurance on our law books, by allowing it to shelter itself under the claims of oversight and inadvertence, when the duty of the insurer is to conduct its business in this state according to our laws. This is not too much to ask of such an insurer.

The only fact issue upon which this case depends is whether the creditor required the debtor to make the premium payment in connection with his application for credit life insurance, under section 33-21-206, MCA. On the record, it appears that this was the case. If Premier Homes, Inc., at the time of the application in this case, made it a practice to add the cost of insurance to the borrower's debt in the usual case where Universal Life Underwriters was to be the insurer, it might then be concluded that the debtor was in fact required to make the premium payment. That is the single fact issue which I think is involved in this case, because

otherwise it appears estoppel prevents the company from raising the no-contract issue.

The claim of Premier Homes and Universal Underwriters that Cameron "waived" his right to written notice and immediate repayment of his premium cannot be sustained, because waiver is a "voluntary abandonment of a known right." There is no way that I can see, after the death of Cameron, to prove his knowledge of these factors.

_John C. Sheehy_
Justice